(C.D. 3051)

TAP EQUIPMENT CO., DBA THRIFTY EQUIPMENT CO. v. UNITED STATES

United States Customs Court, Second Division

(Decided June 29, 1967)

*Glad & Tuttle* (*Edward N. Glad, Earl R. Lidstrom,* and *Robert Glenn White* of counsel), for the plaintiff.

*Carl Eardley,* Acting Assistant Attorney General (*Harold L. Grossman, James F. O'Hara, Herbert L. Warren, Arthur H. Steinberg,* trial attorneys), for the defendant.

Before RAO, FORD, and RICHARDSON, Judges

RICHARDSON, Judge: The merchandise of this protest consists of diesel engine valves and bearings which were imported at Los Angeles, Calif., from England and classified in liquidation as parts of internal-combustion engines of the non-carburetor type under 19 U.S.C.A.,

section 1001, paragraph 372 (paragraph 372, Tariff Act of 1930) as modified by T.D. 51802 at the duty rate of 10 percentum ad valorem. It is claimed by the plaintiff-importer that some of these valves* and the bearings should be classified under the duty free provision for agricultural implements under 19 U.S.C.A., section 1201, paragraph 1604 (paragraph 1604, Tariff Act of 1930). The competing tariff provisions read as follows:

[Par. 372, as modified] Machines, finished or unfinished, not specially provided for:

\* \* \* \* \* \* \*

Internal combustion engines:

\* \* \* \* \* \* \*

Other, of the horizontal type and weighing not over 5,000 pounds each, or not of the horizontal type and weighing not over 2,500 pounds each _____ 10% ad val.

\* \* \* \* \* \* \*

Parts, not specially provided for, wholly or in chief value of metal or porcelain, of articles provided for in any item 372 of this Part:

\* \* \* \* \* \* \*

Other _____ The same rate of duty as the articles of which they are parts.

[Par. 1604] Agricultural implements: . . . and all other agricultural implements of any kind or description, not specially provided for, whether in whole or in parts, including repair parts: *Provided*, that no article specified by name in Tile I shall be free of duty under this paragraph. [free]

It is not disputed that the imported parts are replacement or repair parts for diesel engines of a type manufactured in the United States by the Caterpillar Tractor Co. of Peoria, Ill., and installed in its D-2 and D-4 tractors. The issue here is whether these diesel engines, in which the imported parts are to be used, are dedicated to or used exclusively in the D-2 and D-4 Caterpillar tractors. If the issue is resolved in the affirmative the claim of the plaintiff must be sustained, this division of the court having previously determined in two cases, the records of which are here incorporated, that D-2 and D-4 Caterpillar tractors substantially the same in all material respects as those at bar are agricultural implements within the meaning of paragraph 1604 so as to entitle the tractor parts to duty-free classification. See *Thrifty Equipment Co. and Universal Foreign Service, Inc.* v. *United States*, 42 Cust. Ct. 356, Abstract 62985 and

---

*T-4E [sic]-3150, T-4E [sic]-3149, T-7B-9327, T-7B-9326, T-3B-6899.

*Tap Equipment Co., DBA Thrifty Equipment Universal Foreign Service, et al.* v. *United States*, 43 Cust. Ct. 418, Abstract 63560.

The plaintiff firm sells tractors and equipment and parts therefor all over the United States and since 1947 has imported spare parts for Caterpillar tractors D–2, D–4, D–6, D–7 and D–8, International tractors T–6, T–9, T–14, T–18 and T–24, and Allis-Chalmers tractors H–2, H–5, H–7, H–10 and H–14. Two witnesses from the plaintiff firm testified that they handled the involved engine parts, were familiar with them, and that these parts will only fit the D–2 and D–4 Caterpillar tractor engines, and that they are not interchangeable with comparable parts of other tractor engines either of Caterpillar manufacture or of any other manufacture. Joseph Lubin, co-owner of the plaintiff firm since its inception in 1934, testified that the D–2 and D–4 engines were built solely for use in the D–2 and D–4 tractors, and that these engines would have to be modified in order to fit them for other use. And Wes Cochran, assistant general sales manager of the plaintiff firm and in the business for some 14 years, 9 of which were spent with the plaintiff, testified that the D–2 and D–4 engines can only be used in D–2 and D–4 tractors.

Duane Arment, an economist in the business economics department of Caterpillar Tractor Co. for about 6 years doing market research work and business forecasting, testified on behalf of the defendant. Mr. Arment's testimony relating to production usage of the D–2 and D–4 engines was not based upon personal knowledge, but was based upon data and figures which he abstracted and compiled from company records to which he apparently had access, and which records purported to reflect what the company termed the first 30 days usage of its products. On the basis of this data Mr. Arment testified that there was no such thing as a D–2 or D–4 engine, only specific engines which go into D–2 and D–4 tractors, that these same engines are installed in his company's crawler type shovel loaders, wheel type loaders and motor graders, are used as stationary engines, are sold to other manufacturers for use in their products such as rock crushers, rollers, compactors, construction type machinery, that production of the D–2 tractor was discontinued in 1957 although production of its engine was continued, and that any modification of the D–2 and D–4 engines found necessary to adapt them to other uses would take the form of modification of accessory equipment and not of internal parts of the engine block.

Mr. Arment was unable to state whether or not there had been a change in the bore-stroke ratio of D–2 type engines produced by Caterpillar before and after 1951. And he could not recognize the part numbers on the invoice covering the imported parts at bar among part numbers he had with him, and was unable to state whether the

invoice part numbers identified D–2 and D–4 type engine parts produced by Caterpillar between 1957 and 1962.

Plaintiff recalled Mr. Lubin in rebuttal. Mr. Lubin testified that the engine parts which plaintiff imports are the hard to come by parts for older Caterpillar tractors of the period from the mid-Forties up through 1951, that the parts in issue here are parts of such period, are reflected in catalogues issued by Caterpillar during such period (plaintiff's illustrative exhibits 1 and 2 showing part descriptions and numbers which correspond to descriptions and numbers shown on the invoice covering the merchandise at bar), that the bore and stroke ratios of D–2 and D–4 engines of this vintage are $3\frac{3}{4}''$ x $5''$ and $4\frac{1}{4}''$ x $5\frac{1}{2}''$, respectively (as distinguished from later ratios for these engines of $4''$ x $5''$ and $4\frac{1}{2}''$ x $5\frac{1}{2}''$, respectively, resulting from a changeover in 1951 in the case of the D–2's and 1952 in the case of the D–4's), that he is familiar with Caterpillar's crawler type shovel loaders, wheel type loaders, motor graders and stationary engines, that he handled or owned some of these loaders and graders, and that the engine bore of these machines is not the same as that of the D–2 and D–4 tractor engines for which plaintiff imports parts.

At the conclusion of the trial plaintiff moved to have the testimony of Duane Arment expunged from the record on the ground that the witness' short tenure with the Caterpillar Tractor Co. and lack of familiarity with D–2 and D–4 type engine configuration specifications in older models proves his testimony to be false and misleading. Decision on this motion was reserved by the trial judge for disposition by the division.

The testimony of plaintiff's witnesses establishes. *prima facie* that the diesel engines in which the subject parts are to be installed were designed for use in the D–2 and D–4 tractors produced by Caterpillar Tractor Co. during the period between the mid-Forties and the early Fifties, and that the imported parts will only fit the D–2 and D–4 Caterpillar tractor engines produced during this period. In our opinion defendant has failed to adduce competent evidence to controvert this testimony.

While we are not disposed to expunge from the record the testimony of defendant's sole witness, Duane Arment, as sought by plantiff, and accordingly, deny the motion for such relief, we are not disposed to assigning any probative value to the witness' testimony. The brief tenure* of Mr. Arment with Caterpillar Tractor Co. between 1957 and 1963 coupled with his proven lack of familiarity with diesel engine configuration specifications of D–2 and D–4 Caterpillar engines pro-

---

*The witness' employment with Caterpillar Tractor Co. terminated prior to the submission of this case.

duced during the earlier critical period by his company and with the numerical system used by his company for identification of engine parts of that period militate against his testimony and render it valueless. Furthermore, none of the company records to which this witness is said to have had access were produced in court or offered in evidence. And even when defendant was subsequently unable to recall the witness in an attempt to bolster up his discredited testimony, defendant wholly failed to introduce any other evidence to establish that the engine usage during the period here involved was other than as testified to by plaintiff's witnesses. Thus, the credible evidence stands unrefuted in support of plaintiff's contention.

Consequently, inasmuch as D–2 and D–4 Caterpillar tractors of the mid-Forties to early Fifties have been held by the court to be "agricultural implements" and the instant record establishes *prima facie* that the diesel engines in which the imported parts are to be installed are integral parts of such tractors, the court concludes that the imported parts here in issue are parts of "agricultural implements" and as such are free of duty. See *Richardson Co.* v. *United States*, 8 Ct. Cust. Appls. 179, T.D. 37289. The protest is, therefore, sustained.

Judgment will be entered accordingly.