(C.D. 3182)

F. W. MYERS & COMPANY, INC. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided November 1, 1967)

*Barnes, Richardson & Coburn* (*Joseph Schwartz* of counsel) for the plaintiff.
*Edwin L. Weisl, Jr.*, Assistant Attorney General (*Arthur H. Steinberg* and
*Steven R. Sosnov*, trial attorneys), for the defendant.

Before RICHARDSON and LANDIS, Judges

RICHARDSON, Judge: The merchandise of this protest consists of four crawler-type tractors exported from Canada and entered at Rouses Point, New York, as tractors under item 692.35 of the Tariff Schedules of the United States at the duty rate of 11.5 per centum ad valorem. The tractors were assessed in liquidation as entered and the importer protests the classification, contending that the tractors should be classified under the duty-free provision for tractors "suitable for agricultural use" in item 692.30 of the Tariff Schedules.

The imported tractors were manufactured by the Bombardier Snowmobile, Ltd., of Valcourt, Canada. Three of these tractors are the manufacturer's Muskeg M model, imported with cabs; and the fourth one is its J–5 model, imported with head protector. Basic construction of both models appears to be the same. They are constructed with a toboggan type hull and frame body which, in the case of the Muskeg model, is said to be watertight up to the mudguards. Both models have full-length, endless tracks on both sides of the body composed of reinforced rubber and rayon belts to which are bolted spring steel cross-links and which travel around rubber tired support wheels (Bogie wheels) and front-mounted reinforced rubber sprocket gears.

The principal points of difference in construction between the two models appear to be size and power, with the Muskeg M model being the larger, heavier and more powerful of the two tractors. Thus, where the J–5 model is 9′ 4″ long, 5′ wide, 5′ 10″ high with cab, weighs 3,400 pounds approximately, and employs three support wheels and one sprocket gear on each track, the Muskeg M model is 11′ 8″ long, 7′ 3″ wide, 5′ 8″ high with cab, weighs 5,885 pounds, employs four

support wheels and one sprocket gear in *pairs* on each track, has a rated payload carrying capacity of 2,500 pounds, and can take a V–8 engine to deliver up to 188 horsepower in driving the tractor.

The question presented for determination by the court is whether the involved tractors are "suitable for agricultural use."

Joffre Champigny, sales manager of the industrial division of Bombardier Snowmobile, Ltd., testified that he has seen the subject tractors in use in logging operations in swamps in the southern part of the United States. Mr. Champigny testified that the large "floatation" feature (by which he meant the capacity of the vehicles to be supported on soft surfaces by virtue of their wide tracks) gives these tractors an advantage for work on farms which have low lying soft land. He stated that the tractors have good traction, that they can be used on any farm for farm work, especially in winter for spreading manure over snow, and that power takeoffs can be installed on them to run equipment behind the tractors, such as hay balers.

Rudy Goodall, a dairy farmer from Derby Line, Vermont, testified that he has a J–5 Bombardier tractor which he has used for about 7 years on a dairy farm he operates in Derby Line "in most every manner that it's possible to on a farm." Through Mr. Goodall there was placed in evidence, among other things, a number of photographs (plaintiff's illustrative exhibit 4) depicting him using a J–5 tractor or assisting in its use in plowing, baling hay, and spreading manure. He stated that he has seen about six J–5 tractors in use. He mentioned, among other things, that he has seen a neighbor using a J–5 for spreading manure and lime, and in a sugar bush; that another one is in use in Newport Center, Vermont, with a manure spreader; that one is in use in Island Pond, Vermont, in a sugar bush and in logging; and that another one is in use in South Troy, Vermont, in spreading manure and for plowing. With respect to the Muskeg M tractor, Mr. Goodall stated that he has had very little experience in operating that model. He has seen two Muskeg tractors in use. The witness testified that the J–5 tractor is suitable for agricultural use by virtue of its "floatation" both on soft ground and in snow. He stated that it can go over soft ground that it would be impossible to go over with most anything else; and that in snow it would come up on top and stay aloft.

Leon Elliott, president of Elliott & Hutchins, Inc., a farm machinery dealer in Malone, New York, testified that his company is a distributor or agent for Bombardier products, and that he has handled the Muskeg and J–5 tractors for 11 years. Mr. Elliott stated that he has personally observed the use of the Muskeg and J–5 tractors in New York and New Jersey, and that he has seen the Muskeg tractor logging, disking,

snow packing, and levelling the ground around a building, and has observed the J–5 tractor doing the same things. Mr. Elliott stated that he is familiar with the kinds of equipment which are suitable for farm, agricultural use, that it is necessary in his business to use the type of equipment which is suited for farm or agricultural use, that he is familiar with the J–5 and Muskeg tractors, and that by reason of their "floatation" these Bombardier tractors are the only tractors that in seasonal weather in the wake of a heavy rainfall could go over and pull a field harvester over soft, muddy, wet land in harvesting a corn crop.

And David J. Mahler, a salesman connected with Elliott & Hutchins for 4 years, testified that he sold both the Muskeg and the J–5 tractors, that he sold three or four J–5 tractors within a period of 13 months, and that he has seen a J–5 tractor which he sold pulling a disk harrow in Newton, New Jersey. He identified a photograph (plaintiff's illustrative exhibit 5) of such tractor hitched to a harrow in the field during the lunch break. Mr. Mahler also stated that the Muskeg and J–5 tractors have features which make them suitable for agricultural purposes, stating such features to be ground compaction, traction, "floatation", and pulling power.

Some comparisons between the imported tractors and certain domestic crawler tractors were made by two of the witnesses who stated that they had seen such domestic tractors in use. Mr. Goodall stated that the John Deere and Oliver tractors were similar to the Muskeg and J–5 tractors; and Mr. Mahler stated that the Oliver tractor is similar in weight and traction to the J–5 tractors.

On cross-examination the defendant introduced two brochures into evidence (exhibits A and B). Exhibit A was a brochure prepared by the exporter which showed among several illustrations of the use of the J–5 tractor one photo of it being used on a farm to plow. Exhibit B, another brochure prepared by the exporter, contained several illustrations of the use of the Muskeg tractor, but did not show its use in a farming operation.

The defendant did not produce any witnesses and the foregoing constitutes the salient evidence bearing on the question at issue. Plaintiff contends that the evidence is sufficient to establish that the imported tractors are "suitable for agricultural use," and that they, like domestic tractors, belong to a class or kind of tractors which are "suitable for agricultural use." The defendant contends that the record falls short of establishing suitability of the tractors at bar for agricultural use.

The competing provisions of the pertinent Tariff Schedules of the United States read as follows:

| Item | Articles | Rate[s] of Duty |
|------|----------|-----------------|
| * | * * * * * * | * |

Tractors (except tractors in item 692.40 and except automobile truck tractors), whether or not equipped with power take-offs, winches, or pulleys, and parts of such tractors:

| | | |
|------|----------|-----------------|
| 692.30 | Tractors suitable for agricultural use, and parts thereof_____ | Free |
| 692.35 | Other _____ | 11.5% ad val. |

"Suitable" for one use does not exclude other uses. Nor does suitability require that the merchandise be chiefly used for the stated purpose.

*United States* v. *Lorsch & Co.*, 8 Ct. Cust. Appls. 109, T.D. 37222, and *Wah Shang Company* v. *United States*, 44 CCPA 155, C.A.D. 654. But suitability does require more than evidence of a casual, incidental, exceptional or possible use.

*Kahlen* v. *United States*, 2 Ct. Cust. Appls. 206 at page 208, T.D. 31947.

There must be a substantial actual use.

*Wah Shang Company* v. *United States, supra.*

But there is nothing in the *Shang* case to indicate that the word "substantial" should be stretched to reach back and revive "chief use." It is submitted that "substantial" is the antithesis of "casual, incidental, exceptional, or possible." "In the tariff law the term 'suitable' means actually, practically, and commercially fit." The unrefuted evidence that the involved tractors are used on farms for spreading manure and lime and other fertilizer, used in sugar bushes for gathering maple sap, used for plowing, used to pull hay balers, used for seeding, used to pull harvesters in harvesting corn, and used in disk harrowing is sufficient to show that said tractors are actually, practically, and commercially fit for agricultural purposes.

*Kahlen* v. *United States, supra.*

Our attention has been called to the "Explanatory Notes" to the Tariff Classification Study dated November 15, 1960 wherein it is stated (pp. 325–326):

Items 692.30 and 692.35 cover tractors (except platform tractors and automobile truck tractors). Item 692.30 would put on a sounder basis the existing treatment of tractors as agricultural implements under paragraph 1604 of the free list of the Tariff Act of 1930. In recent years, practically all imports of tractors have been admitted free under paragraph 1604. Tractors are mobile power units used for many purposes, including agricultural, construction, road building, etc. Attempts to distinguish so-called agricultural-type tractors from types

chiefly used for non-agricultural purposes necessarily involve unrealistic distinctions. For years it was the practice to classify as agricultural implements only so-called wheel-type tractors. Within recent months a so-called half-tread tractor, said to be of special design for agricultural purposes, was held to be free as an agricultural implement. Item 692.30 would change the present "chief use" concept implicit in paragraph 1604 by providing for tractors "suitable for agricultural use." In view of the unrealistic distinctions which have been involved in the administration of the chief use concept, it is believed that the practical result has been more nearly a suitability test rather than one of chief use. Moreover, the suitability test is much less difficult to apply. Tractors not suitable for agricultural use are provided for in item 692.35 at the existing rate of duty of 11.5 percent ad valorem currently applicable under paragraph 372.

It is clear that the foregoing note reflects a congressional intent in the enactment of item 692.30 of the Tariff Schedules not to exclude from the duty-free treatment accorded agricultural tractors under item 692.30 of the Tariff Schedules those imported track-type tractors capable of several uses, so long as their suitability for agricultural use is established. Also, tariff provisions for agricultural implements should be liberally construed so that the evident intent of Congress to benefit agriculture should be effected. *United States* v. *American Express Co.*, 12 Ct. Cust. Appls. 483, 486, T.D. 40693. The evidence adduced by the plaintiff establishes the suitability of the involved tractors to perform agricultural tasks, within the meaning of the aforementioned authorities and cases.

According to the testimony adduced here three of the four witnesses have actually seen the imported tractors engaged in farming operations in the United States. And one of these witnesses has used such tractors himself in farming operations over a period of 7 years. Moreover documentary evidence in the record confirms such agricultural usage of these tractors. In our opinion such unrefuted evidence is sufficient to make out a *prima facie* case in support of the claimed classification, thereby necessitating some showing to the contrary on the part of the defendant. This the defendant has failed to do. And we do not find the arguments advanced by the defendant in support of its contentions to be persuasive. Argument cannot substitute for the rebuttal evidence which is lacking in the instant record. It, therefore, follows that the protest must be sustained.

Judgment will be entered accordingly.