ALLIS-CHALMERS CORPORATION, PLAINTIFF *v.* UNITED STATES, DEFENDANT

Court No. 82-8-01107

Before CARMAN, *Judge.*

(Dated March 23, 1984)

*Rode & Qualey,* (*Patrick D. Gill* on the motion) for the plaintiff.
*Richard K. Willard,* Acting Assistant Attorney General; *Joseph I. Liebman,* Attorney in Charge, International Trade Field Office, Commercial Litigation Branch (*Barbara M. Epstein* on the motion) for the defendant.

CARMAN, *Judge:* This matter is before me on plaintiff's motion for judgment on the pleadings and defendant's cross-motion for summary judgment. There are no genuine issues of material fact. Jurisdiction lies pursuant to 28 U.S.C. § 1581(a)(Supp. V 1981).

The plaintiff imported tractor seat suspensions from West Germany on March 17, 1982, the classification of which is at issue in this case. The imported tractor seat suspensions were classified as parts of furniture designed for motor vehicle use at 3.7 percent ad valorem under Item 727.06 of the Tariff Schedules of the United States (TSUS).[1] Plaintiff claims that the proper classification of this merchandise is as parts of tractors suitable for agricultural use, free of duty under item 692.34, TSUS.[2] Defendant argues that the imported merchandise is more specifically provided for as parts of furniture designed for motor vehicle use under item 727.06, TSUS, although it admits that the imported tractor seat suspensions are parts of tractors suitable for agricultural use. Plaintiff asserts that Congress did not intend the merchandise in question to be within the purview of item 727.06, TSUS.

---

[1] Item 727.06, TSUS, provides:
Furniture designed for motor-vehicle use, and parts therof.................................. 3.7% ad val.
[2] Item 692.34, TSUS, provides:
Tractors suitable for agricultural use, and parts thereof ...................................... Free

The parties have agreed that if the merchandise is described by both TSUS item 727.06 and TSUS item 692.34, the merchandise is more specifically provided for under TSUS item 727.06, the provision under which it was classified. The question before this court is whether the imported tractor seat suspensions, which are conceded to be parts of tractors suitable for agricultural use, fall within the meaning of the provision for parts of furniture designed for motor vehicle use, item 727.06, TSUS.

Plaintiff argues that relevant case law and the legislative history establish that Congress intended item 727.06, TSUS, to apply only to articles that would have been classified as automotive parts under schedule 3, paragraph 369(c), of the Tariff Act of 1930, as amended, ch. 497, § 1, sched. 3, ¶ 369(c), 46 Stat. 590, 625. Since agricultural tractor parts were previously classifiable under schedule 16, paragraph 1604, of the Tariff Act of 1930, and not under paragraph 369(c), plaintiff concludes that the imported tractor seat suspensions are not designed for motor vehicle use within the intention of item 727.06. Defendant argues in a slightly different way, contending that tractors are motor vehicles under the Tariff Schedules [3] and are more specifically provided for under 727.06, TSUS, pursuant to paragraph 10(ij) of the General Headnotes and Rules of Interpretation, TSUS.

Item 727.06 TSUS, the provision for furniture designed for motor vehicle use, was not part of the tariff schedules as originally enacted in 1963. The provision was added by section 36 of the Tariff Schedules Technical Amendments Act of 1965, Pub. L. No. 89–241, § 36(1), 79 Stat. 933, 941.[4] The legislative history of item 727.06, TSUS, reflects that Congress intended the scope of that provision to cover those articles that would have been classified as automotive parts under paragraph 369(c) of the Tariff Act of 1980. The House Report attending passage of the Technical Amendments Act, in part, states as follows:

> (l) *Furniture designed for motor vehicle use.*—The furniture covered by the amendment made by subsection (l) of section 3[6] consists primarily of *seats and parts of seats designed for motor vehicles. Under the former tariff schedules such articles were generally classified as auto parts under paragraph 369(c)*

---

[3] Defendant contends that since this is not a case where one of two competing provisions is more specific but rather whether the merchandise is described at all by TSUS item 727.06, defendant asserts the question turns on whether the term "motor vehicle" as used in TSUS item 727.06 includes tractors. This court does not agree that whether a tractor can be called a motor vehicle is determinative, nor is it persuaded that a tractor is a motor vehicle within the meaning of item 727.06, TSUS. As is pointed out in the *Tariff Classification Study,* "tractors are mobile power units used for many purposes, including agricultural, construction, road building, etc." United States Tariff Commission, *Tariff Classification Study, Schedule 6,* at 325 (1960).

[4] The new item 727.06 was one of several provisions relating to automobile parts that was added by public law 89–241. Some of the other added provisions were: (1) a new item 647.01, which was added by section 36(a) to provide for hinges, fittings, and mountings, designed for motor vehicles; and, (2) item 683.65, which was added by section 36(h) providing for electric lighting equipment designed for motor vehicles.

*at 8½ percent ad valorem.* Under the new schedules these articles are classified as furniture and parts at rates ranging from 12½ percent ad valorem to 35 percent ad valorem depending on the component of chief value.

Subsection (*l*) of section 3[6] would establish new item 727.06 and apply to these articles *the same rate that was formerly applicable (8.5 percent ad valorem).*

H.R. Rep. No. 342, 89th Cong., 1st Sess. 26–27 (1965) (emphasis added).

When Congress enacted the provision for furniture designed for motor vehicle use, it attempted to correct a situation where furniture and parts were being classified "at rates ranging from 12½ percent ad valorem to 35 percent ad valorem." *Id.* at 27. Item 727.06 "restores a rate of 8.5 percent (instead of the various higher rates which would apply to the specific pieces of furniture)." S. Rep. No. 530, 89th Cong., 1st Sess. 29 (1965), *reprinted in* 1965 *U.S. Code Cong. & Ad. News* 3416, 3444. Given that agricultural tractor parts were being imported duty free, this provision would not have restored any rates.

Furthermore, the Technical Amendments Act provisions discussed are remedial in nature. They were enacted in order to correct unintended and inequitable results in the original tariff schedules. In observing the remedial character of the provision, it was stated:

> [T]he Committee on Ways and Means was aware of the fact that the actual administration of the new tariff schedules very probably would bring to light unintended rate changes and other inadvertencies or oversights which would require corrective legislation. Shortly after the new schedules were placed in effect on August 31, 1963, the committee's attention was directed to several such instances. In an effort to treat with such matters on a comprehensive basis, the Ways and Means Committee, on December 13, 1963, invited all interested parties to make suggestions limited to those provisions of the tariff schedules wherein it appears that through oversight, inadvertencies, or lack of information, errors may have been made or clarifying language may be necessary.
>
> * * * In other words, the Committee directed its attention only to the correction of provisions in the new tariff schedule which clearly involved errors arising from oversight, inadvertence or lack of information or which required clarification.
>
> \*         \*         \*         \*         \*         \*         \*
>
> Certain of the changes that would be effected by the bill will result in duty increases, others will bring about decreases in duty, and others will result in no change of duty at all. *But I want to make it crystal clear that none of the changes involve new tariffmaking.* On the contrary, the increases or decreases in duty rates provided for in H.R. 7969 are for the purpose of

eliminating those instances of tariffmaking that inadvertently crept into the new tariff schedules.

111 *Cong. Rec.* H10,599 (daily ed. May 17, 1965) (statement of Rep. Mills) (emphasis added). In addition to the noted legislative history, Congress has traditionally accorded agricultural equipment preferential treatment. It has long been established that "the tariff provisions for agricultural implements should be liberally construed so that the evident intent of Congress to benefit agriculture [can] be effected." *F. W. Myers & Co.* v. *United States,* 59 Cust. Ct. 445, 450 (1967); *see United States* v. *American Express Co.,* 12 Ct. Cust. Appls. 483, 486 (1925).

A basic rule of statutory construction is to give effect to the intent of the legislature. *Sandoz Chemical Works, Inc.* v. *United States,* 43 CCPA 152, 156 (1956). In the case at hand, the legislative history reveals that tractor seat suspensions are not within the intended scope of item 727.06, TSUS. Although the defendant enjoys a presumption of correctness with regard to Customs' classification of imports, 28 U.S.C. § 2639 (Supp. V 1981), plaintiff has met its burden of proof in this case. Defendant's classification of the merchandise under item 727.06, TSUS, is erroneous and plaintiff's suggested classification under item 692.34, TSUS, is correct.

Therefore, for the above mentioned reasons, plaintiff's motion for judgment on the pleadings is granted and defendant's cross-motion for summary judgment is denied.