## K. Iguchi v. United States

.No. 4698.—Invoices dated Tokyo, Japan, August 12, 1937, etc.
Certified August 16, 1937, etc.
Entered at Providence, R. I., September 24, 1937, etc.
Entry No. 282, etc.

(Decided January 4, 1940)

*Jerome G. Clifford* (*John F. Kavanagh* of counsel) for the plaintiff.
*Webster J. Oliver*, Assistant Attorney General (*Dorothy C. Bennett* and *Richard E. FitzGibbon*, special attorneys), for the defendant.

Tilson, Judge: The appeals to reappraisement listed in schedule "A," hereto attached and made a part hereof, involve the proper dutiable value of canned tuna fish imported from Japan, the invoices of which were certified between the dates of April 30, and October 28, 1937. The cases last appeared on the docket at Providence on May 16, 1939, at which time they were heard and submitted.

At the trial counsel for appellant offered evidence in an effort to establish that there had not been such a designation and examination of the merchandise as would constitute a compliance with the mandatory provisions of section 499 of the Tariff Act of 1930, and that, therefore, the appraisements were all null and void. Counsel for the Government called attention to the special regulations by the Secre-

tary of the Treasury covering the designation and examination of merchandise such as and similar to that in these appeals, reported in T. D. 48807 and T. D. 49412, and thereupon contended that the designation and examination of the merchandise in these appeals was in strict compliance with said section 499, as amended by said special regulations.

In view of the recent ruling of our appellate court in *United States* v. *Young*, C. A. D. 73, there can be no question but that these special regulations are valid. So considering said special regulations, I have carefully examined the evidence before me on the question of whether the designation and examination in this case was sufficient to constitute a legal designation and examination. Although in several cases it appears that less than 1 per cent of the packages of merchandise was designated and examined for the purpose of appraisement, yet an examination of said special regulations shows that they specify no minimum quantity to be designated and examined. Holding, as our appellate court has, that special regulations such as these are valid, would require a holding that an appraisement was valid even though the same were based upon the examination of only one package out of an entire shipload of merchandise, consisting of one million packages.

From the evidence I am satisfied that such designations and examinations as were made in this case were sufficient compliance with said section 499 and the special regulations as to authorize me to hold that the appraisements based thereon were not null and void.

In reappraisement 121817–A the following appears on the consumption entry:

Add to meet advances made by the appraiser in similar cases 52.47.
Albany Appeal #1, Entry #A70483 Asosan Maru 6/4/37.
Providence Appeal #17, Entry #16 Amagisan Maru 6/30/37.

Under the heading "Remarks" on the "Summary of Entered Value" sheet, there appear the following red-ink notations: "Importer's additions noted."

While these notations are not on the ordinary form used for the purpose of preparing a duress certificate, and do not contain the words ordinarily employed for that purpose, I feel that the same is sufficient to inform the appraiser, collector and others concerned that the importer was entering under duress. While this duress entry might have been more complete and specific, it is sufficient in its present form to comply with section 503 of the Tariff Act of 1930, and I therefore accept and hold the same to be a proper duress entry.

The entry in reappraisement 121821–A appears to be a straight entry, and there is nothing to indicate that there was any intent to make a duress entry in this case. In all the other appeals I find that proper duress entries and certificates were filed.

In neither reappraisement 121821–A, in any of the other reappraisements in this case, nor in the so-called test cases, the entries in which are cited in the duress certificates in this case, did the appraiser give the slightest suggestion that the market in Japan in which the merchandise was purchased was not the principal market for such or similar merchandise, nor is there any indication by the appraiser that the quantities in which the merchandise in each reappraisement in this case was purchased, shipped, and imported into the United States were not usual wholesale quantities sold in the ordinary course of trade. The only thing the appraiser found in any case before me to which the importer does not subscribe was that the invoiced prices were not the prices at which such or similar merchandise was sold or freely offered for sale in the principal markets of Japan, in usual wholesale quantities in the ordinary course of trade.

The concluding sentence of the first paragraph of section 501 of the Tariff Act of 1930 reads as follows:

The value found by the appraiser shall be presumed to be the value of the merchandise and the burden shall rest upon the party who challenges its correctness to prove otherwise.

In this case the importer makes no contention that the quantities in which the merchandise was invoiced are not usual wholesale quantities, as found by the appraiser. The importer makes no contention that the market in which this merchandise was purchased was not the principal market in the country of exportation for such or similar merchandise, as found by the appraiser. The importer makes no contention that the export value is not the proper basis for appraisement, as found by the appraiser. The importer makes no contention that the sale of the involved merchandise was not in the ordinary course of trade, as found by the appraiser. The only contention the importer makes in this case is that the appraised values are higher than the price at which such or similar merchandise is sold or freely offered for sale to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade for exportation.

There is no evidence before me to overcome the presumptively correct finding of the appraiser that the quantities in which this merchandise was invoiced are the usual wholesale quantities. There is no evidence before me to overcome the presumptively correct finding of the appraiser that the market in which this merchandise was purchased was the principal market in the country of exportation for such or similar merchandise. There is no evidence before me to overcome the presumptively correct finding of the appraiser that export value is the correct basis for appraisement. Neither is there any evidence before me to overcome the presumptively correct finding

of the appraiser that the sale of the involved merchandise was in the ordinary course of trade.

In discussing the burden that rests upon the appellant in a reappraisement case, the appellate court, in *United States* v. *Downing*, 20 C. C. P. A. 251, T. D. 46057, held as follows:

It is sufficient here to bear in mind that the importer having appealed, it was incumbent upon it to show (1) the foreign value and (2) the export value, to the end that the higher might be taken as the dutiable value, or to show (1) a foreign value and the non-existence of an export value, or (2) an export value and the non-existence of a foreign value. Being the appealing party, it was incumbent upon it "to meet every material issue involved in the case." *Meadows, Wye & Co. (Inc.) et al.* v. *United States*, 17 C. C. P. A. (Customs) 36, 42, T. D. 43324.

It might be assumed and argued that the importer in the instant case had not shown (1) the foreign value and (2) the export value, to the end that the higher might be taken as the dutiable value, or (1) a foreign value and the nonexistence of an export value, or (2) an export value and the nonexistence of a foreign value, and that therefore it had failed to meet every material issue involved in the case.

There can be no doubt that the appellant is required to meet every material issue in the case, but in the instant case there is no issue, material or otherwise, concerning the foreign and export value for the reason that there is a presumptively correct finding of export value by the appraiser as the proper basis of appraisement and there is no evidence before me sufficient to overcome such a finding by the appraiser. So long as the appellant does not question the presumptively correct finding of export value by the appraiser as the proper basis for appraisement, and so long as there is no evidence in the record to overcome such presumptively correct finding, there can be no issue, material or otherwise, on this point.

In this case of *United States* v. *Lilly*, 14 Ct. Cust. Appls., 332, T. D. 41970, in determining the factors which enter into the classification of merchandise by the collector, the appellate court said:

The collector, having classified the goods under said paragraph 217, when the matter came to the attention of the court below, the presumption was that he had found all the necessary facts to exist which brought the goods within that classification, and that his classification was correct.

I therefore hold that when this matter came to my attention the presumption was that the appraiser had found all the facts to exist which were necessary to support his appraisement, including a finding that export value was the proper basis of appraisement, that the market in which this merchandise was sold was the principal market in the country of exportation in which such or similar merchandise was sold, or freely offered for sale in the ordinary course of trade, and that the quantities shown on the invoices were the usual wholesale quantities.

In view of the foregoing I must determine from the evidence before me whether or not the presumptively correct value found by the appraiser has been overcome by the evidence offered. At the trial of the case the vice president of the importing corporation testified that he had been with this same corporation for 9½ years; that he was in charge of sales and buying; that in the year 1938 his firm handled 45,000 cases of tuna fish, and that he had been to Japan many times, the last time being in 1935; that he placed the order for this merchandise by cable, and the instant merchandise was shipped in 1937. On the question of the value of the merchandise he testified as follows:

Q. Do the prices on these invoices here represent the prices you paid for this merchandise?—A. Yes, sir.
Q. You testified that the price paid for this merchandise was the price shown on the invoices?—A. Yes, sir.
Q. You paid exactly what appears on these invoices?—A. Yes, sir.
Q. Could any one in the United States get that quality represented on these invoices by paying that price?—A. Yes, sir.

On the question of the value of this merchandise the above testimony stands uncontradicted, and under the decision in the case of *United States* v. *Glendinning, McLeish*, 12 Ct. Cust. Appls., 222, T. D. 40229, is sufficient to overcome the presumptively correct value found by the appraiser. The following is quoted from the above case:

This case is submitted to this court upon the following stipulation:

\*  \*  \*  \*  \*  \*  \*

3. The importers filed appeals to reappraisement which were heard by United States General Appraiser Weller, at which hearing the importer appeared and testified that he ordered the merchandise by cable, that it was invoiced to him at the prices enumerated upon the invoices, which he accepted, and that he actually paid these prices less the discounts enumerated on the invoice; whereupon the importer rested.

4. Upon the record as thus made, both sides submitted.

\*  \*  \*  \*  \*  \*  \*

It is argued by the Government that the evidence submitted by the importer at the hearing before the general appraiser was not sufficient to overcome the presumption of correctness attending the findings of value of the appraiser and that the findings of value as returned by the general appraiser should have been sustained by the Board of General Appraisers.

\*  \*  \*  \*  \*  \*  \*

It is a well-established rule of law that the official acts of the customs officials are presumed to be correct.—*United States* v. *Rappolt & Co.* (9 Ct. Cust. Appls. 21; T. D. 37846).

The jurisdiction of the general appraiser having been invoked by the appeals to reappraisement filed by the importer, it was incumbent upon him to submit in the first instance competent and relevant evidence of a substantial character tending to prove the issuable facts, in order to overcome the presumption of correctness attending the findings of value returned by the appraiser. If he did submit such evidence to the general appraiser, the Government having presented no evidence, the findings of the general appraiser should have been in accordance with the evidence adduced by the importer. If he failed to submit evidence of

the character stated, the presumption of correctness attending the findings returned by the appraiser was not overcome and the findings of value returned by the general appraiser should have been sustained by the Board of General Appraisers.

It seems to us that a fair and reasonable construction of the stipulation before us establishes the following facts: The goods were ordered by cable, the order was accepted and the merchandise was shipped in three shipments, October 1, October 8, and November 12, 1922; the facts as stated constituted an order and an acceptance, a purchase and sale, at prices "enumerated upon the invoices."

In the absence of evidence to the contrary it seems to us that we may assume the natural sequence of events in transactions in due course of trade, and that therefore the merchandise was shipped within a reasonable time after the receipt of the order therefor and at prices prevailing in the markets of the country at or near the time of shipment or exportation.

*The importer paid the prices enumerated in the invoices.*

This evidence is substantially more than a mere examination of the invoices and the prices written therein, and the affidavit in connection therewith; it is competent evidence of the entire transaction and of the issuable facts before the general appraiser for consideration, and eliminated from consideration the conjecture, in the absence of any impeaching testimony, many and various questions that may have been under consideration by the appraiser when he performed his duties of appraisement. *In any event it was competent, relevant testimony of a substantial character and of sufficient probative force to overcome the presumption of correctness attending the findings of value returned by the appraiser.* It was not conclusive evidence of the facts. The Government might have offered evidence of a substantial, contradictory character, and findings of value may have been returned by the general appraiser in accordance therewith. The Government offered no evidence. [Italics mine.]

Likewise in the instant case, the evidence offered by the importer was not conclusive evidence of the facts, but as in the *Glendinning* case, *supra*, the evidence offered by the importer was, in any event, competent, relevant testimony of a substantial character and of sufficient probative force to overcome the presumption of correctness attending the findings of value returned by the appraiser, thus establishing for the importer a *prima facie* case.

My examination of the decisions of the appellate court subsequent to the *Glendinning* decision, *supra*, fails to disclose any case in which the *Glendinning* decision has been referred to and the holdings therein reversed or modified. Until the *Glendinning* decision is reversed or modified it is the law, and I am bound by it when, as in the instant case, the evidence brings the case squarely within the pronouncements therein made.

During the trial of the case counsel for the Government made the following statement:

The first case is a collector's appeal. The collector's case has a foreign report. Therefore, Mr. Kavanagh is of the opinion if he can break down anything in this report he will win his own cases. Therefore, Mr. Kavanagh is going to try to build his own case on the weakness of the Government's case. Therefore, if we have to proceed, the Government will abandon its appeal.

While it is true Government counsel stated "The collector's case has a foreign report," in view of the fact that the entry in one of the instant cases was made just before the entry in the collector's case, and entries in other of the instant cases were made shortly subsequent to the entry in the collector's case, it will hardly be presumed that the special agent's report was limited exclusively to the collector's case, and had no bearing or connection with the market conditions for other tuna fish exported from Japan at or about the date of the exportation of the tuna fish in the collector's case.

It is clear to me from the record in this case that at the time of the trial the Government had in its possession a special agent's report regarding the value of tuna fish in Japan at or about the dates of exportation of the merchandise herein, which, as above shown, it did not offer in evidence, but rather than do so elected to abandon its appeal. With reference to the inference that must be drawn in a case where a party fails to produce evidence within his knowledge and power, 22 Corpus Juris 111, says:

The failure of a party to produce evidence which is within his knowledge, which he has power to produce, and which he would naturally produce if it were favorable to him, gives rise to an inference that if such evidence were produced it would be unfavorable to him;  *  *  *.

To the same effect is the holding of the Circuit Court of Appeals for the Eighth Circuit, in the case of *Choctaw* v. *Newton*, 140 Fed. 225, as follows:

Where a party has the means of producing testimony within his knowledge or keeping upon a material question involved in the case, and fails to do so, the presumption arises that the fact is against him.   Gulf, etc. Ry. Co. v. Ellis, 54 Fed. 481, 483, 4 C. C. A. 454; Clifton v. United States, 4 How. 242, 244, 11 L. Ed. 957; Graves v. United States 150 U. S. 120, 14 Sup. Ct. 40, 37 L. Ed. 1021; Runkle v. Burnham, 153 U. S. 216, 225, 14 Sup. Ct. 837, 38 L. Ed. 694; Kirby v. Talmadge, 160 U. S. 379, 383, 16 Sup. Ct. 349, 40 L. Ed. 463.

The above principles were again pronounced in the case of *Wylde* v. *Cowin*, 250 Fed. 403, wherein the Circuit Court of Appeals, First Circuit, used the following language:

The failure, unexplained, to produce evidence which is in the possession of a party, raises a presumption that if produced, it would not be favorable to the contention of the party possessing it.

Again in the case of *Atchison, etc. R. Co.* v. *Davis*, 26 Okl. 359, 364, 109 P. 551, the law is stated in the following language:

When the circumstances in proof on the part of the plaintiff tend to fix a liability on the defendant who has it in his power to offer evidence of all the facts as they existed and rebut the inferences which the circumstances of the facts proved tend to establish, and he fails to offer such proof, the natural conclusion is that such proof, if produced, instead of rebutting, would support the inferences against the defendant, and the jury is justified in acting upon such conclusion.

Applying the law, as above set out, to the facts in this case I feel justified in holding that the failure of the Government to offer the special agent's report in evidence, admittedly in its possession at the time of the trial, raises the natural conclusion that said report, if produced, instead of rebutting, would support the invoice values in this case.

After a careful consideration of the record before me, and following the authorities hereinbefore cited and quoted, I find and hold that the proper dutiable export values of the tuna fish in each of the appeals in this case are the invoiced values, less ocean freight, marine insurance, cartage and lighterage, and consul fee. Judgment will be rendered accordingly.