(C.D. 4130)

SOL KAHANER & BRO. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided on rehearing [C.D. 3272] November 20, 1970)

*Siegel, Mandell & Davidson* (*Allan H. Kamnitz* of counsel) for the plaintiff.
*William D. Ruckelshaus*, Assistant Attorney General (*Peter Jay Baskin*, trial attorney), for the defendant.

Before Rao and Ford, Judges, and Wilson, Senior Judge

Wilson, Judge: The involved merchandise, described on the invoices as "Rayon Braid", was exported from Italy and entered at the port of New York during August and September 1961.

The merchandise was classified as trimmings under the provisions of paragraph 1529(a), Tariff Act of 1930, as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, 91 Treas. Dec. 150, T.D. 54108. Duty was assessed thereon at the rate of 42½ per centum ad valorem.

The importer claims said merchandise is in fact braid made on a braiding machine which is suitable for making or ornamenting hats and as such dutiable only at 22½ per centum ad valorem under the provisions of said paragraph 1529(a), *supra*, as modified by the Trade Agreement with Switzerland, 90 Treas. Dec. 174, T.D. 53832.

The pertinent portions of the involved statutes read as follows:

Classified under:

Paragraph 1529(a),Tariff Act of 1930, as modified by T.D. 54108:

All-overs, edgings, flouncings, flutings, fringes, galloons, gimps, insertings, neck rufflings, ornaments, quillings, ruchings, trimmings, and tuckings, all the foregoing, provided for in subdivision [2] of paragraph 1529(a) _____  42½% ad val.

Claimed under:

Paragraph 1529 (a), Tariff Act of 1930, as modified by T.D. 53832:

> Braids (including braids or bandings made
> wholly or in part of braids), suitable for mak-
> ing or ornamenting hats, bonnets, or hoods,
> * * * made * * * on a * * * braiding ma-
> chine, composed wholly or in chief value of
> rayon or other synthetic textile, or of yarn,
> threads, or filaments other than cotton, valued
> $1.60 or more per pound_____ 50¢ per lb. but
> not less than
> 22½% ad
> val.

Counsel have agreed that the merchandise is valued at $2.29% per pound, or more.

This identical protest was previously decided by this court in *Sol Kahaner & Bro.* v. *United States*, 60 Cust. Ct. 94, C.D. 3272 (February 1, 1968), whereby the protest was overruled. The court stated in part, pages 95–97:

> "Based upon the record as made, plaintiff contends the imported articles are braid made on braiding machines and which are used for making or ornamenting hats. Defendant, on the other hand, contends plaintiff has failed to overcome the presumption of correctness attaching to the classification of the collector in negativing the fact that the imported merchandise is not trimming.

> \*        \*        \*        \*        \*        \*        \*

> "The first consideration is, therefore, whether the involved merchandise is braid. Since there is no claim to the effect that the term "braid" has a commercial designation which differs from the common meaning, we are guided by the common meaning of the term. * * *

> \*        \*        \*        \*        \*        \*        \*

> "The witness testified the imported article was produced on a braiding machine but admitted he was told it was a braiding machine by the manufacturer. He had no independent knowledge that the machine was in fact a braiding machine. Since the involved merchandise was made on a machine, it is obviously not handmade. There is a lack of evidence as to whether the machine which produced said merchandise is a loom, knitting, lace, or braiding machine. Since the provision involved includes the process of manufacture of the braid, it is essential that said article fall within one of the specified processes. Plaintiff has failed to establish this by a preponderence of credible evidence.

> "In addition to the failure of proof as to the manufacturing aspect of the involved braid, there is also a failure of proof as to the component material. Under the portion of paragraph 1529 (a),

*supra*, claimed by plaintiff to be applicable to the imported braid there is a requirement that said braid be composed of rayon or other synthetic textile or yarns, threads, or filaments other than cotton. The record is barren of any evidence relative to the component material which would bring the imported merchandise within the purview of paragraph 1529(a), as claimed.

"In view of the foregoing, plaintiff has failed to overcome the presumption of correctness attaching to the classification of the collector. *Brown Boveri Corp., Gehrig Hoban & Co., Inc.* v. *United States*, 53 CCPA 19, C.A.D. 870 [1966]; *Alintex, Inc. and Fred P. Gaskell Co., Inc.* v. *United States*, 53 CCPA 94, C.A.D. 883 [1966].

"The protest is, therefore, overruled."

The importer moved for a rehearing and stated in its memorandum in support thereof:

"The plaintiff, being allowed to submit additional evidence in this matter, can establish by means of testimony of the manufacturers in Italy that the involved merchandise was made on a braiding machine."

and requested

"an opportunity to establish that the braids are in chief value of rayon and made on a braiding machine."

The motion for a rehearing was granted as was plaintiff's motion for a commission to take the testimony of Mr. Francesco Alzati of the firm of Ditta Francesco Cairati, Milan, Italy, and Mr. Pietro Dall'Olio, Milan, Italy upon direct and cross-interrogatories. The affidavit of plaintiff's trial counsel in support of the latter motion states that the court had "found the proofs lacking to establish that the braids were made on a braiding machine and that the braids were wholly or in chief value of rayon or other synthetic textiles, other than cotton, as required by the claimed provision." The said affidavit also states that the said motion is made "in order to establish the elements of proof the Court found lacking in C.D. 3272."

Pertinent to the questions involved in the rehearing are plaintiff's exhibit No. 14, Commission No. 1533, executed by Pietro Dall'Olio; plaintiff's exhibit No. 15, Commission No. 1532, executed by Francesco Alzati; defendant's exhibit A, Commission No. 1531, executed by Pietro Dall'Olio, and defendant's exhibit B, Commission No. 1530, executed by Francesco Alzati.

The issue as presently presented is whether the imported merchandise was produced on a braiding machine, and whether material in the said merchandise is in chief value of rayon. The evidence submitted on the rehearing consisting of the direct and cross-interrogatories, and the

answers thereto, will therefore be considered as they may affect the three entries before the court.

As to Entries 458558 and 457870

Testimony as to Whether the Merchandise in These Two Entries Was Produced on a Braiding Machine

The merchandise involved in the above two entries was produced by the firm of Dall'Olio and Dalla Longa. Pietro Dall'Olio testified on October 16, 1969 in reference to such merchandise. He testified in Direct Interrogatory No. 13 of exhibit 14:

"If you know, (a) what is the name of the type of machine or machines on which these items are made? (b) How do these machines operate? (c) How do you know how these machines operate and the name of the type of Machine?"

He responded:

"a) The manufacture operations for all our materials are made with different machines, the most important of which are the Crochet Machines.
b) Manufacturing process is too long and difficult to explain.
c) I follow the manufacture of our materials."

In Direct Interrogatory No. 10 of exhibit 14, he was asked to describe the manufacturing operations in detail which are performed by his firm in creating the merchandise, and he stated:

"We buy raw yarns from an Italian manufacturer. These yarns are then dyed and transformed through different, successive operations. The resulting material is put in machines designated Crochet Machines."

This witness also previously testified on *February 13, 1969* and at that time stated that the machine used to produce the involved merchandise was a "Crochet Machine." See answer to Direct Interrogatory No. 11(a) of exhibit A. In answer to Cross Interrogatory No. 23 of exhibit A, he referred to the machines as "Crochet Machines" and said they were purchased under the name of "Braid Machines." He did not state the source of such statements. The record does not disclose whether Dall'Olio deemed "Crochet Machines" and "Braid Machines" like or similar or the same machine. The evidence fails to show that those machines which produced the merchandise under consideration were the same machines contemplated by Congress in paragraph 1529(a) as "braiding machine[s]" in the claimed provision. Hence there is a failure of proof as to whether the merchandise imported in the above two entries was actually produced on a braiding machine.

## Testimony as to the Component Material of Chief Value of the Merchandise Imported in the Above Two Entries

To determine the component material of chief value of an article, the costs of the separate components to the manufacturer at the time they are ready to be assembled or combined into the article, must be established. *United States* v. *Jovita Perez et al.*, 44 CCPA 35, C.A.D. 633 (1957). Invoice price or values stated therein cannot properly establish the chief value of component materials. *United States* v. *Rice-Stix Dry Goods Co.*, 19 CCPA 232, T.D. 45337 (1931) ; *Wilshire Industries, Inc.* v. *United States*, 64 Cust. Ct. 84, C.D. 3963 (1970).

In *W. T. Grant Co.* v. *United States*, 23 Cust. Ct. 58, 59, C.D. 1191 (1949), this court stated :

"When this case was called for trial, counsel for the importer offered in evidence the invoice, entry, and all other official papers. These were received over the objection of Government counsel to the statements contained in the invoice."

On appeal in *W. T. Grant Co.* v. *United States*, 38 CCPA 57, C.A.D. 440 (1950), the appellate court stated at page 61 :

"It will thus be seen that the important issue on this appeal is the nature of the consular invoice as evidence, and the relationship of the statements on the manufacturer's invoice to it. For if the statements on the manufacturer's invoice attached to the consular invoice purporting to show that the gloves were in chief value of woven material are inadmissible in evidence in this case, they are, in view of the Government's timely objections, inadmissible to overcome the presumption of correctness of the collector's classification *or* to establish the correctness of the classification claimed by the importer." [Italics quoted.]

In a footnote thereto, the court said :

"We here state the importer's contention ; we do not imply that such invoice statements are ever competent to overcome the presumption of correctness attaching to official action."

And at page 65 the court stated :

"The Government's objection to the statements on the cited invoice was proper, and the trial court was correct in holding the character of the statement to be ruled by the *National Aniline* case, *supra* [*United States* v. *National Aniline and Chemical Co.*, 3 Ct. Cust. Appls. 10, T.D. 32287 (1912)], as an *ex parte* declaration lacking probative value."

In the case at bar we find nowhere in the record that the invoices in these two entries and the other entry were offered in evidence. Hence, they may not be considered as sufficient in law or fact to establish that the imported merchandise was composed of material in chief value of rayon or other synthetic textile, as plaintiff contends.

The *Grant* case, *supra*, was cited in *Dominick Butti* v. *United States*, 49 CCPA 1, 6, C.A.D. 778 (1961), and in *United States* v. *Western Electric Company*, 26 Cust. Ct. 531, Reap. Dec. 7954 (1951). In the latter case, the court stated at page 534:

"A judge of the Customs Court is not permitted to go beyond the evidence in the case and take notice, in deciding the case, of documents and papers which have not been offered in evidence and which have not been legitimately made a part of the record of the case which has been tried and submitted for decision and judgment. *United States* v. *Baiz & Co.*, 5 Ct. Cust. Appls. 319, T.D. 34526 [1914]; *United States* v. *Burley & Tyrrell Co.*, 5 id. 401, T.D. 34938 [1914]; 2 Hyatt on Trials, sec. 1968, note 44."

And at pages 535, 536:

"Where, as here, a party in order to sustain an essential element of his proof relies upon the contents of a paper or document contained in or included in the 'official files or papers' as tending to prove the truth of the matters recited therein, the mere presence or inclusion of such paper or document in the 'official files or papers' will not suffice to prove the truth of the contents of said paper or document, but it must, like all other documents and papers, be offered and properly received in evidence before it may be considered by the court in deciding the case. *W. T. Grant Company* v. *United States* [38 CCPA 57, C.A.D. 440 (1950)], *supra; Interstate Commerce Commission* v. *Louisville and Nashville Railroad Co.* [227 U.S. 88 (1913), at pp. 91, 92, and 93], *supra; United States* v. *Abilene & Southern Railway Co.* [265 U.S. 274 (1924)], *supra,* at p. 288, *United States* v. *Baiz & Co.* [5 Ct. Cust. Appls. 319, T.D. 34520 (1914)], *supra; United States* v. *Burley & Tyrrell Co.* [5 Ct. Cust. Appls. 401, T.D. 34938 (1914)], *supra; United States* v. *Bird* [11 Ct. Cust. Appls. 229, T.D. 38991 (1922)], *supra; Wanamaker* v. *United States* [6 Ct. Cust. Appls. 21, T.D. 35271 (1915)], *supra.*"

Mr. Dall'Olio testified that he was reluctant to reveal, for business reasons, the cost of each component and the cost of each operation in preparing the components to be joined into the finished articles, but he also stated that he had "No records available at this time [10/16/69]." As the merchandise was entered in *1961*, it does not warrant giving probative weight to the figures and other information attached as exhibits A and B to exhibit 14. An examination of said exhibits A and B discloses that they are photostats of the invoices respectively in entries 458558 and 457870. Neither of them is signed by Dall'Olio, although in answer to Direct Interrogatory No. 9 of exhibit 14, he asserts that they "are correct."

## As to Entry 468494

### Testimony as to Whether the Merchandise Was Produced on a Braiding Machine

The merchandise in the above entry was produced by Ditta Francesco Cairati. Francesco Alzati testified on November 17, 1969, in reference to such merchandise. He testified, Direct Interrogatory No. 13 of exhibit 15:

> "If you know, (a) what is the name of the type of machine or machines on which these items are made? (b) how do these machines operate? (c) how do you know how these machines operate and the name of the type of machine?"

He replied:

> "(a) Braid machines.
> (b) Our materials are manufactured through three different operations, which are: (1) The yarns are covered with silky rayon; (2) The wreathing of the material; (3) The finishing of the braids.
> (c) As I control the manufacture of our materials."

He previously testified on February 13, 1969, to the identical question propounded in Direct Interrogatory No. 13 as follows in Direct Interrogatory No. 11 in exhibit B:

> "(a) Crochet Machine.
> (b) Through electrical motors.
> (c) I have purchased them."

In answer to Cross Interrogatory No. 23 (b) in exhibit B, he stated that the machines were purchased under the name of "Crochet Machine."

Noticeable is the fact that Alzati at first on February 13, 1969 (exhibit B) referred to the machine as a "Crochet Machine" and then more than 9 months later, on November 17, 1969 (exhibit 15 he referred to the machine as "Braid Machines." The cause for the change in identifying the machine which produced this merchandise, though peculiarly within the knowledge of the plaintiff or the exporter is not explained.

In *K. Iguchi* v. *United States*, 4 Cust. Ct. 551, 557, Reap. Dec. 4698 (1940), the following is quoted from 22 Corpus Juris 111:

> "The failure of a party to produce evidence which is within his knowledge, which he has power to produce, and which he would naturally produce if it were favorable to him, gives rise to an inference that if such evidence were produced it would be unfavorable to him; * * *."

The *Iguchi* case, *supra*, also cites *Choctaw & M.R. Co.* v. *Newton*, 140 Fed. 225 (1905); *Wylde* v. *Cowin*, 250 Fed. 403 (1918). See also *The Algie*, 56 F. 2d 388 (1932), affirmed in 67 F. 2d 1014 (1933).

Thus there is a failure of proof as to whether the merchandise imported in this entry was produced on a braiding machine.

TESTIMONY AS TO THE COMPONENT MATERIAL OF CHIEF VALUE OF THE MERCHANDISE IMPORTED IN THE ABOVE ENTRY

As noted *supra* in reference to the other two entries, the record fails to disclose the admission in evidence of the three invoices in the case at bar which include the one now under consideration. Alzati testified that exhibit A, which is a photostat of the invoice being considered, is "correct" as to the materials and respective weight mentioned therein. (See answer to Direct [noted as Cross] Interrogatory No. 9 of exhibit 15.) An examination of the invoice does *not* disclose that the witness, Francesco Alzati, signed it. It is signed by a representative of S.N.T. Fratelli Gondrand. The invoice may, therefore, not be considered as sufficient in law or fact to establish that the imported merchandise was composed of material in chief value of rayon or other synthetic textile as plaintiff contends.

Mr. Alzati testified that he is familiar with the materials used and their costs. (See answer to Direct [noted as Cross] Interrogatory No. 14 of exhibit 15.) In answer to Interrogatory No. 18, he states: "Our firm does not maintain records of the costs of the raw materials." In Interrogatory No. 21, he states: "No records were employed. I keep these costs in mind." This quote has reference to his answer to Interrogatory No. 20 wherein he states the various costs of each component, and the cost of each operation. As the merchandise imported was entered in *1961* and he testified on *November 17, 1969*, it does not warrant giving probative weight to the figures and other information attached as exhibit A to exhibit 15.

In exhibit B the witness testified on February 13, 1969, that his firm maintained records only of the costs of these materials (Direct Interrogatory No. 17 of exhibit B), but that the prices he stated in answer to Direct Interrogatory No. 20 of said exhibit B* were taken "From the Invoices." (Answer to Direct Interrogatory No. 21.) As heretofore noted, the invoice is NOT in evidence, and therefore commands no probative weight as to the component material of chief value of the merchandise imported in this entry.

Mr. Alzati further testified in reference to the component materials of chief value of the merchandise in this entry stating the figures in the invoice represented by exhibit A of exhibit B are correct. (Answer

*He testified: "(a) The prices indicated in the invoices less 25%. (b) Since the price is low, it becomes quite difficult to indicate the cost of each operation."

to Direct Interrogatory No. 9.) As no records of costs of raw material were maintained, and as these were kept "in mind," the court has serious doubts as to their authenticity after a lapse of over 8 years.

The overall testimony of both Dall'Olio and Alzati, while indicating some familiarity with the questions before the court, is deemed insufficient in fact or law to overcome the presumption of correctness of the collector's classification under paragraph 1529(a), as modified by T.D. 54108, *supra*, and the assessment of duty thereunder at the rate of 42½ per centum ad valorem.

In our decision in C.D. 3272, we made certain statements as to the evidence before the court at the time of the original submission and concluded that the "plaintiff has failed to overcome the presumption of correctness attaching to the classification of the collector." The protest was there overruled and subsequently on plaintiff's motion a rehearing was granted. We herein incorporate by reference, as though fully and at length verbatim herein repeated, our said decision in C.D. 3272.

We have reviewed the entire evidence, examined the exhibits, considered the arguments of both counsel in their briefs and conclude that plaintiff has not overcome the presumption of correctness attaching to the collector's classification and assessment of duties.

The protest as to all three entries, Nos. 458558, 457870, and 468494, will be overruled and judgment will be entered accordingly.