**AMERICAN EXPRESS CO.**

v.

**UNITED STATES.**

**C.D. 4395; Protest 69/36206–30101–68 against the decision of the regional commissioner of customs at the port of New York.**

United States Customs Court, ·
Third Division.

Nov. 30, 1972.

ID 56/36 was made for the John Deere crawler tractors for use on models 420, 430, 440, 1010 and 2010. The J. I. Case parts are invoiced as CA 23A/39 and CA 30A/39 for use on models 800 and 1000. This merchandise was classified under item 692.35, Tariff Schedules of the United States, as parts of tractors, other, and assessed with duty at the rate of 11.5 per centum ad valorem. Plaintiff contends said merchandise consists of parts of tractors suitable for agricultural use and as such is entitled to entry free of duty under item 692.30, Tariff Schedules of the United States.

The pertinent statutory provisions involved provide as follows:

> Tractors (except tractors in item 692.40 and except automobile truck tractors), whether or not equipped with power take-offs, winches, or pulleys, and parts of such tractors:
>
> 692.30 Tractors suitable for agricultural use, and parts thereof .... Free
>
> 692.35 Other ................11.5% ad val.

The record herein consists of the testimony of two witnesses called on behalf of plaintiff and 15 documentary exhibits received on its behalf.

Mr. Stanley B. Goodman, president of Surplus Tractor Parts Corporation, the actual importer herein, testified that he has been in the tractor parts business since 1939 and that he is familiar with the imported merchandise. The items ID 56/36 and ID 21 are the foreign manufacturer's designations of track chain for John Deere tractors, models 420, 430, 440, 1010 and 2010. In the opinion of the witness, they would not fit any other make or model tractor. Both items are 36 links in length and differ only in the amount of bolt holes in the links to fasten the shoes and are interchangeable. These items are track chains and not track assemblies. The latter would consist of the chain, shoes, nuts and bolts, and anything shown in exhibit 2 at page 3. Models 1010 and 2010 are no longer being manufactured but were current models from approximately 1960 to 1964 or 1965. The cur-

Tenneson, Serkland, Lundberg & Erickson, Fargo, N. D. (Lowell W. Lundberg, Fargo, N. D., of counsel), for plaintiff.

Harlington Wood, Jr., Asst. Atty. Gen. (Patrick D. Gill, New York City, trial attorney), for defendant.

Before RICHARDSON, LANDIS and FORD, Judges.

FORD, Judge:

This case involves the proper classification of certain track assemblies or track chains imported for use with various models of American built tractors. The merchandise invoiced as ID 21 and

rent models, which compare to the 1010 and 2010, are models 350 and 450. The witness was of the opinion, based upon his experience, that John Deere tractors, models 1010 and 2010, are suitable for agricultural purposes. They are actually so used, and he has farm customers who have bought parts for their tractors. The tractor without the track is inoperable. The original price of model 1010 was approximately $4,500 and the 2010 approximately $6,500. The Caterpillar D4 original price was approximately $9,300 and the Allis Chalmers HD6 is in the same size category and would cost approximately $9,900. The International TD9 original cost would be about $8,900 and the TD6 about $6,700. John Deere models 420, 430, 440 predated the 1010 and 2010 but no modifications were made in the tracks so they are interchangeable.

The Case tractors, models 800 and 1000, utilize part Nos. CA 30A/39 and CA 23A/39. The former has a ½-inch bolt hole and the latter a 9/16-inch bolt hole. The CA designation is the foreign manufacturer's designation for Case. At the time of importation, Case had discontinued the 1000 series and was making the 1150 series. The 800 series is also no longer being produced having ceased production about 1965. These parts are not usuable on any other tractor and without the track, the tractor is inoperable. Mr. Goodman believed the models 800 and 1000 as being practically and commercially suitable for agricultural purposes. While he has observed them on a farm, he has not actually seen them in operation. Model 1000 weighs about 13,885 pounds. The original price of model 800 is $10,000 and model 1000 is $12,000.

Mr. Henry L. Kucera, associate professor of the agricultural engineering department at North Dakota State University, was next called by plaintiff. The witness is also a registered professional engineer and teaches the power and machinery aspect of agriculture. In addition to his work at the University, he was until 1965 a manager of an 800-acre farm. He is familiar with the John Deere 1010 and 2010 tractors and the Case 800 and 1000 tractors as well as the TD6 and TD9, the D4 and HD6. The witness was of the opinion that the John Deere 1010 and 2010 and the Case 800 and 1000 are actually, practically and commercially suitable for agriculture. They are used for general farm field work such as plowing, cultivating, land smoothing, draining and pulling all sorts of implements. The 800 and 1000 are used extensively for industrial operations as are all crawler tractors. The use of large tractors such as the D8 and D9 would only have marginal use in agriculture. The Case 1000 would be slightly larger than the D4 but would be comparable to between a TD9 and TD14. The John Deere 1010 and 2010 would be the equivalent to a Caterpillar D2 in weight and horsepower.

The questions presented for determination by the court are twofold. The first question is whether the imported articles are parts of tractors? If they are parts, are the tractors suitable for agricultural use?

█ The evidence establishes that a crawler tractor is inoperable without a track or track assembly which is the source of moving the tractor. It has been further established to our satisfaction that said track or track assemblies would fit only specific makes and models and could not be used on any other, i. e., ID 21 and ID 56/36 could only be used on John Deere tractors models 420, 430, 440, 1010 and 2010 while item CA 23A/39 and CA 30A/39 could be used only on J. I. Case tractors 800 and 1000. The track or track assemblies are therefore parts. Gallagher & Ascher Company v. United States, 52 CCPA 11, C.A.D. 849 (1964). This is, in fact, conceded by defendant in its brief.

Prior to the enactment of the Tariff Schedules of the United States, there was considerable litigation involving

crawler tractors which were claimed to be free of duty as agricultural implements under paragraph 1604, Tariff Act of 1930. Under this provision, the tractors were required to be chiefly used for agriculture. In the case of Thrifty Equipment Co. and Universal Foreign Service, Inc. v. United States, 42 Cust. Ct. 356, Abs. 62985 (1959), certain roller shells for the D2 Caterpillar tractor were held to be parts of tractors chiefly used for agriculture and hence entitled to entry free of duty under the provisions of paragraph 1604, *supra*, as agricultural implements. It also appears that the evidence established therein that the D2 was not large enough for industrial use.

This case was followed by TAP Equipment Co., DBA Thrifty Equipment Universal Foreign Service, et al. v. United States, 43 Cust.Ct. 418, Abs. 63560 (1959), wherein the parties agreed and the court held that certain track chain assemblies, roller groups or sprockets for the D2 and D4 Caterpillar tractors and the HD5 Allis Chalmers tractor were parts of tractors chiefly used in agriculture.

In TAP Equipment Co., DBA Thrifty Equipment Co. v. United States, 58 Cust.Ct. 559, C.D. 3051 (1967), certain valves and bearings for use in the engines of D2 and D4 Caterpillar tractors were held to be entitled to entry free of duty as agricultural implements under paragraph 1604, *supra*.

Based upon the foregoing authority, it is clearly evident that the D2 and D4 Caterpillar tractors and the HD5 Allis Chalmers tractor are not only suitable for agricultural use, as will be discussed below, but are chiefly so used.

 Under the Tariff Schedules of the United States, the question of chief use is not involved in the claimed provision but rather that of suitability. While there have been many decisions concerning this term, the decision of Judge Richardson in F. W. Myers & Company, Inc. v. United States, 59

Cust.Ct. 445, C.D. 3182 (1967), reviewed a number of such cases which clearly and concisely set forth the applicable law as follows:

"Suitable" for one use does not exclude other uses. Nor does suitability require that the merchandise be chiefly used for the stated purpose.

United States v. Lorsch & Co., 8 Ct.Cust.Appls. 109, T.D. 37222, and Wah Shang Company v. United States, 44 CCPA 155, C.A.D. 654.

But suitability does require more than evidence of a casual, incidental, exceptional or possible use.

Kahlen v. United States, 2 Ct.Cust. Appls. 206 at page 208, T.D. 31947.

There must be a substantial actual use.

Wah Shang Company v. United States, *supra*.

But there is nothing in the *Shang* case to indicate that the word "substantial" should be stretched to reach back and revive "chief use." It is submitted that "substantial" is the antithesis of "casual, incidental, exceptional, or possible." "In the tariff law the term 'suitable' means actually, practically and commercially fit."
\* \* \*

Kahlen v. United States, *supra*.

In addition after reviewing the following information in the Explanatory Notes to the Tariff Classification Study, the decision further relies upon the intent of Congress in affording free entry of track-type tractors which have a capability of more than one use.

Items 692.30 and 692.35 cover tractors (except platform tractors and automobile truck tractors). Item 692.30 would put on a sounder basis the existing treatment of tractors as agricultural implements under paragraph 1604 of the free list of the Tariff Act of 1930. In recent years, practically all imports of tractors have been admitted free

under paragraph 1604. Tractors are mobile power units used for many purposes, including agricultural, construction, road building, etc. Attempts to distinguish so-called agricultural-type tractors from types chiefly used for non-agricultural purposes necessarily involve unrealistic distinctions. For years it was the practice to classify as agricultural implements only so-called wheel-type tractors. Within recent months a so-called half-tread tractor, said to be of special design for agricultural purposes, was held to be free as an agricultural implement. Item 692.30 would change the present "chief use" concept implicit in paragraph 1604 by providing for tractors "suitable for agricultural use." In view of the unrealistic distinctions which have been involved in the administration of the chief use concept, it is believed that the practical result has been more nearly a suitability test rather than one of chief use. Moreover, the suitability test is much less difficult to apply. Tractors not suitable for agricultural use are provided for in item 692.35 at the existing rate of duty of 11.5 percent ad valorem currently applicable under paragraph 372.

It is clear that the foregoing note reflects a congressional intent in the enactment of item 692.30 of the Tariff Schedules not to exclude from the duty-free treatment accorded agricultural tractors under item 692.30 of the Tariff Schedules those imported track-type tractors capable of several uses, so long as their suitability for agricultural use is established. Also, tariff provisions for agricultural implements should be liberally construed so that the evident intent of Congress to benefit agriculture should be effected. United States v. American Express Co., 12 Ct.Cust.Appls. 483, 486, T.D. 40693. * * *

It appears from the record that the John Deere tractors, models 1010 and 2010 and their predecessors the 420, 430, and 440 are smaller and less costly than the D4 Caterpillar tractor involved in the *Thrifty* cases, *supra*. The weight runs from 4371 pounds for the model 420 to 8500 pounds for model 2010 and the original price ran from $3,000 to $6,500 respectively. The D4, which is larger than the D2 weighs approximately 12,725 pounds and its original cost was approximately $9,300.

The Case tractors, models 800 and 1000, have been established to weigh approximately 11,200 pounds and 13,000 pounds and originally cost approximately $10,000 and $12,000 respectively. The weight and price of model 800 falls within the D4 class. Model 1000 fits within the D6 class insofar as weight is concerned as evidenced by plaintiff's exhibit 15, i. e., which has a shipping weight of from 17,992 to 23,700 pounds.

The relevancy of the above is clearly apparent when a review of the invoices involved indicates that classification under item 692.30, *supra*, was accorded certain "roller group" for the D2, D4 and D6 tractors. The presumption of this classification is that said merchandise is parts of those tractors and said tractors are suitable for agricultural purposes.

The testimony of the importer based upon his experience in the trade since 1939 and his observation of actual use may be afforded some weight in determining suitability. In the case of Klipstein v. United States, 1 Ct.Cust. App. 122, T.D. 31120 (1910), the court of appeals made the following observation:

* * * Importers and merchants are naturally desirous of increasing the number of their customers and the demand for the goods in which they deal, and as they have every incentive for knowing the uses to which their wares are or may be put it is only fair to assume, at least *prima facie,* that the only uses known to them are the only uses of such wares.

The testimony of Mr. Kucera substantiates this presumption. His observation of actual use and his experience as a farmer, engineer and instructor in power farm machinery establishes actual, practical and commercial use of the tractors for agricultural purposes. The imported articles are parts of such tractors. In addition a consideration of the class of tractors involved tends to confirm the suitability for agricultural purposes. Since the D2 and D4 tractors have been judicially held to be agricultural tractors and customs in this case classified parts of a D6 as suitable for agricultural use, any tractor in this class is in our opinion suitable for such use.

 Accordingly, the track assemblies or track chains for use with the John Deere models 420, 430, 440, 1010 and 2010 and the Case models 800 and 1000 are entitled to entry free of duty under the provisions of item 692.30, *supra*, as claimed.

Judgment will be entered accordingly.

RICHARDSON and LANDIS, JJ., concur.