**SOL KAHANER & BRO.**

v.

**UNITED STATES.**

**C.D. 4480; Court Nos. 66/25961–7323–65, etc.**

United States Customs Court.
Nov. 9, 1973.

Siegel, Mandell & Davidson, New York City (Steven S. Weiser, New York City, of counsel), for plaintiff.

Irving Jaffe, Acting Asst. Atty. Gen. (Velta A. Melnbrencis, New York City, trial atty.), for defendant.

FORD, Judge:

The cases listed in schedule "A," annexed hereto and made a part hereof, involve the proper classification of certain imported merchandise claimed to be non-elastic braid or braided materials suitable for making or ornamenting headwear as provided for in item 703.95, Tariff Schedules of the United States. The merchandise was classified, except as otherwise noted, under the provisions of item 357.70, Tariff Schedules of the United States, as fringes or other trimmings and as such assessed with duty at the rate of 42.5 per centum ad valorem. The merchandise covered by protest 66/76518, which includes item # 3116/3 (exhibit 6), was classified as braid not suitable for making or ornamenting

headwear under item 348.05, Tariff Schedules of the United States, and also assessed with duty at the rate of 42.5 per centum ad valorem. Defendant in its amended answer abandoned the classification and affirmatively claims the proper classification to be under the provisions of item 357.70, *supra*.

In addition, defendant has moved to sever protest 66/25961 and dismiss said action for failure to prosecute. The decision on said motion made at the trial was reserved and will be considered *infra*.

The pertinent portions of the statutory provisions read as follows:

*Schedule 3 headnotes:*

1. This schedule does not cover—

\* \* \* \* \* \* \*

(iv) footwear, headwear, gloves, handbags, pillows, mattresses, and other articles of textile materials provided for in schedule 7.

2. For the purposes of the tariff schedules—

(a) the term *"textile materials"* means—

\* \* \* \* \* \* \*

(v) braids, as defined in headnote 2(f), *infra*, \* \* \*

\* \* \* \* \* \* \*

(f) the term *"braids"*, as used in connection with textile materials or textile articles, includes all braids in the piece, whether of flat, tubular, or other construction, with or without cores, and whether braided from fibers, filaments (including tinsel wire and lame), yarns, cordage, textile fabrics, or any combination thereof;

Schedule 3, part 4, subpart A:
Braids not suitable for making or ornamenting headwear:

\* \* \* \* \* \* \* \*

348.05 Other .................................. 42.5% ad val.

Schedule 3, part 4, subpart C:
357.70 Edgings, insertings, galloons, fringes, and other trimmings, all the foregoing (except fabrics in the piece described in subpart A or B of this part) whether in the piece or otherwise, of textile materials ................ 42.5% ad val.

Schedule 7, part 1, subpart B:
Nonelastic braids and other nonelastic braided materials suitable for making or ornamenting headwear:

\* \* \* \* \* \* \* \*

703.95 Of textile materials (except abaca and ramie) 18% ad val.

———◆———

This action was previously the subject of a decision denying a motion for summary judgment. Sol Kahaner & Bro. v. United States, 70 Cust.Ct. ——, C.R.D.

73–5 (1973). The record in the instant case includes the incorporated record of a trial under the provisions of the Tariff Act of 1930, Sol Kahaner & Bro. v. United States, 60 Cust.Ct. 94, C.D. 3272 (1968), decided on rehearing Same v. Same, 65 Cust.Ct. 512, C.D. 4130 (1970), as well as additional testimony and exhibits. The incorporated record has been amply reviewed in the prior decisions, C.D. 3272 and C.D. 4130, *supra*, and will not be further set forth herein. The record in the case at bar establishes that the involved merchandise was in fact used to make or ornament headwear during the period involved. The merchandise was known in the millinery trade as braid, was made on a knitting machine, and contained some braid. Being made on a knitting machine, it does not have the so-called "maypole" construction. Defendant's trade witnesses did not consider exhibits 1–10 to be braid but testified they were trimmings and in some instances fringes.

■ A motion was made by defendant to sever protest 66/25961 and to dismiss for failure to prosecute. It is the contention of defendant that inasmuch as the protest filed with the regional commissioner of customs at the port of New York was against the classification, which covers the "frogs" on the invoice, under item 353.50, *supra*, and since plaintiff contends no so-called frogs are being litigated, its motion should be granted. An examination of the protest does establish the fact that it was filed against classification under item 353.50, *supra*, at the rate of 42.5 per centum ad valorem but further states its claim is on "rayon hat braids." The invoice discloses that there were two classes of merchandise assessed with duty at the rate of 42.5 per centum ad valorem: the frogs under item 353.50, *supra*, and the merchandise invoiced as rayon braid which was in fact classified under item 357.70, *supra*. It is apparent that while the item number under the Tariff Schedules of the United States set forth in said protest would cover frogs, the description of the merchandise intended to be covered clearly indicated the merchandise to be rayon braid. I am of the opinion the protest is sufficient and the court has jurisdiction to entertain the complaint covering this entry of so-called rayon braid. The motion of defendant to sever and dismiss is therefore denied.

■■ As indicated, *supra*, the court is of the opinion that the involved merchandise on or about the time of importation was used to make or ornament headwear. The statutory language requires only "suitability" to make or ornament headwear. In the case of American Express Co. v. United States, 69 Cust.Ct. 209, C.D. 4395, 350 F.Supp. 1402 (1972), cases on suitability were reviewed. In effect the term does not exclude other uses nor does it require the merchandise to be chiefly used for a stated purpose. Suitability does however require evidence of more than a casual or incidental use, exceptional or possible use. The use must be substantial. The evidence herein meets these tests and accordingly the merchandise is suitable for making or ornamenting headwear.

■ The question remaining for determination is whether the imported merchandise is braid. In determining this, the basic rule is to ascertain the intent attributed to said provision by Congress. The first and most obvious method for determining such intent is to examine the statute itself. United States, etc. v. Simon Saw & Steel Company, 51 CCPA 33, C.A.D. 834 (1964). The entire context of the statute including headnotes must be considered in order to interpret the statute as intended by Congress. Where intent is not clearly evident, certain rules of construction may be utilized in order to ascertain congressional intent. Rules of construction are merely principles used for such purpose and cannot have a controlling effect if sufficient evidence is found which establishes that Congress intended a result different from that indicated by the application of these rules. United

States v. Lansen-Naeve Corp., 44 CCPA 31, C.A.D. 632 (1957).

Two principles of construction are urged by the parties to this action. Plaintiff contends that since no commercial designation has been claimed, the common meaning of the tariff term "braid" must control. This position is one which has been utilized often in customs jurisprudence. Defendant on the other hand urges the court to consider the legislative history concerning the headnote in schedule 3 defining "braids." Assuming, arguendo, that the merchandise at bar falls within the common meaning of the term "braid" as evidenced by the testimony under the principle of construction urged by plaintiff, the imported merchandise would be held as braids suitable for making or ornamenting headwear as claimed. Was this the intent of Congress?

■ An examination of the definition set forth in the headnote, *supra,* does not specify by what machine or particular construction braids covered thereby are to be made. The legislative history as set forth in the *Tariff Classification Study,* Schedule 3 (1960), contains the following comment:

The term "braids" which is defined in headnote 2(f) is a term which has acquired a variety of meanings. It has been loosely used to include ornamental trimmings of practically every construction. Properly, however, and as used in these schedules, braid is formed by a special "maypole" type of construction, in which three or more lengths are diagonally intertwined. It is so interpreted in customs practice, with the exception of a limitation which has been imposed by practice, affirmed by court ruling (CD 825; CIE 1661/57). Under these rulings, it is the practice of customs officers to exclude from the meaning of the term "braids" so-called cords which consist of a braided sheath surrounding an inner core. This latter practice is not reflected in the proposed definition which would include all braids in the piece whether flat, tubular, or of other construction, and whether with or without cores. The proposed definition also includes such braids whether they have been braided from fibers, filaments (including tinsel wire and lame), yarns, cordage, textile fabrics, or any combination thereof. It is believed that this definition properly reflects the trade conception of braid.

\* \* \* \* \* \*

The provision for braids covers those which are not suitable for making or ornamenting headwear. The headwear braids are dutiable in part 1B of schedule 7. As previously stated in the explanatory notes regarding the definition of the term "braids" (schedule 3, headnote 2(e) [sic]), this term includes true braids whether or not they contain cores. In item 348.-00 tubular braids with a nonelastic core are separately provided for in order that the existing customs practice of imposing lower rates of duty thereon may be continued. In the interest of clarification and simplicity, the five different rates which are set forth in the existing provisions of paragraphs 912, 1015, 1113, 1207, and 1308 have been compromised into an estimated average rate of 30 percent ad valorem. Item 348.05 involves no rate change.

From this, it is apparent that the intent was to include in the term "braids" only so-called true braid which is formed by a special "maypole" type of construction in which three or more lengths are diagonally intertwined. The record establishes the imported articles are not so constructed. They are accordingly not within the intended definition of "braids."

■ The fact that all 10 exhibits are in part of braid does not assist plaintiff in its cause since the Tariff Schedules of the United States provision involved does not utilize the language "in part of" as did the predecessor provision, paragraph 1529(a), Tariff Act of 1930,

as modified. I am not unmindful that the predecessor provisions of the Tariff Acts of 1922 and 1930 included braid made by hand or on a lace, knitting or braiding machine. The statutory language under the Tariff Schedules of the United States provisions involved do not specify the machine. A change in language imports a change of meaning unless the contrary is plainly apparent. Fynaut & Popek v. United States, 23 CCPA 265, T.D. 48112 (1936). The change in the statutory language herein establishes the intent to exclude merchandise made on knitting machines. Accordingly the claims in the protests are overruled and the action is dismissed.

Judgment will be entered accordingly.