C.D. 4813

GARAY & CO., INC., PLAINTIFF v. UNITED STATES, DEFENDANT

Court No. 78-4-00628

(Decided July 31, 1979)

Before FORD, *Judge.*

*Shaw and Stedina (Charles P. Deem* on the brief) for the plaintiff.
*Stuart E. Schiffer,* Acting Assistant Attorney General; *Joseph I. Liebman,* Attorney in Charge, Field Office for Customs Litigation *(Madeline B. Cohen* on the brief), for the defendant.

FORD, Judge: This action is before the court on cross-motions for summary judgment filed pursuant to rule 8.2 of the rules of this court. This merchandise consists of linen handbags, styles SB7559 and SB7560, which were classified under item 706.20, Tariff Schedules of the United States, as modified by T.D. 68-9, as handbags of textile material wholly or in part of braid and assessed with duty at the rate

of 21 per centum ad valorem. The classification is based upon the construction of the inner portion of the handles.

Plaintiff contends the inner portion of the handles is not braid. Accordingly, plaintiff urges the proper classification of the handbags to be under item 706.23, Tariff Schedules of the United States, as modified by T.D. 68–9, as other handbags of vegetable fibers, not pile or tufted, which provides for assessment of duty at 6.5 per centum ad valorem.

The pertinent statutory provisions provide as follows:

> Luggage and handbags, whether or not fitted with bottle, dining, drinking, manicure, sewing, traveling, or similar sets; and flat goods:

> \* \* \* \* \* \* \*

> Of textile materials (except yarns, of paper), whether or not ornamented:

| | | |
|---|---|---|
| 706.20 | Wholly or in part of braid_ _ _ _ _ | 21% ad val. |

> \* \* \* \* \* \* \*

> Other:
> Of vegetable fibers and not of pile or tufted construction:

> \* \* \* \* \* \* \*

| | | |
|---|---|---|
| 706.23 | Other_ _ _ _ _ _ _ _ _ _ _ _ _ _ | 6.5% ad val. |

*Schedule 3 headnotes:*

\* \* \* \* \* \* \*

2. For the purposes of the tariff schedules—

\* \* \* \* \* \* \*

(f) the term "braids," as used in connection with textile materials or textile articles, includes all braids in the piece, whether of flat, tubular, or other construction, with or without cores, and whether braided from fibers, filaments (including tinsel wire and lame), yarns, cordage, textile fabrics, or any combination thereof;

\* \* \* \* \* \* \*

The statements of the parties filed pursuant to rule 8.2(b) of the rules of this court attest to the fact that there is no genuine issue of fact to be tried. The parties agree in effect that the handles consist of textile fabric and yarn. The several pieces of yarn are diagonally intertwined and perform the useful function of holding the cloth pieces, which are located inside the handles, in a round form during and after the sewing of the outer material of the handles.

This matter is submitted on statements of facts under rule 8.2(b), supra, together with two samples which have had the handles cut in

order to explore the inner construction. In addition, defendant has supplied two affidavits, one from Arthur Price, a professor of textile science and chairman of the department at the Fashion Institute of Technology which is a unit of the State University of New York. The second affidavit was that of Karen P. Binder, an attorney with the Office of the Assistant Chief Counsel for Customs Court Litigation, U.S. Customs Service, in which she deposes that she presented the samples of the imported merchandise to Mr. Price.

The question of law presented for determination is whether the diagonally intertwined yarn contained in the inner handles of the handbags constitutes braid. The affidavit of Professor Price, who examined the samples, states as follows:

> Based upon my experience, it is my opinion that the inner portion of the handle of this handbag is composed of textile fabric which is wrapped by three or more lengths of yarn which are diagonally intertwined in a so-called "maypole" construction.

The definition of the term "braids," as set forth, supra, in headnote 2(f) of schedule 3, makes it evident that said term was intended to encompass braids "in the piece," "whether of flat, tubular, or other construction," "with or without cores" and whether made "from fibers, filaments (including tinsel wire and lamé), yarns, cordage, textile fabrics, or any combination thereof."

The legislative intent with respect to headnote 2(f) is set forth in the "Tariff Classification Study," schedule 3 (1960), as follows:

> The term "braids" which is defined in headnote 2(f) is a term which has acquired a variety of meanings. It has been loosely used to include ornamental trimmings of practically every construction. Properly, however, and as used in these schedules, braid is formed by a special "maypole" type of construction, in which three or more lengths are diagonally intertwined. It is so interpreted in customs practice, with the exception of a limitation which has been imposed by practice, affirmed by court ruling (CD 825; CIE 1661/57). Under these rulings, it is the practice of customs officers to exclude from the meaning of the term "braids" so-called cords which consist of a braided sheath surrounding an inner core. This latter practice is not reflected in the proposed definition which would include all braids in the piece whether flat, tubular, or of other construction, and whether with or without cores. The proposed definition also includes such braids whether they have been braided from fibers, filaments (including tinsel wire and lame), yarns, cordage, textile fabrics, or any combination thereof. It is believed that this definition properly reflects the trade conception of braid.
>
> * * * * * * *
>
> The provision for braids covers those which are not suitable for making or ornamenting headwear. The headwear braids are dutiable in part 1B of schedule 7. As previously stated in the

explanatory notes regarding the definition of the term "braids" (schedule 3, headnote 2(e)), this term includes true braids whether or not they contain cores. In item 348.00 tubular braids with a nonelastic core are separately provided for in order that the existing customs practice of imposing lower rates of duty thereon may be continued. In the interest of clarification and simplicity, the five different rates which are set forth in the existing provisions of paragraphs 912, 1015, 1113, 1207, and 1308 have been compromised into an estimated average rate of 30 percent ad valorem. Item 348.05 involves no rate change.

Congress, in enacting the provisions for braids, was well aware of the variety of meanings which the term has acquired. In order to prevent misunderstanding, Congress set forth the type of construction of braids it intended to cover. The construction was for three or more lengths to be diagonally intertwined which is known as a "maypole" type of construction. Plaintiff admits the construction is the result of two to four pieces of cloth wrapped with several pieces of yarn diagonally intertwined. Mr. Price, after examination of the exhibits, confirmed this and further designated such construction as the maypole type.

While classification is under schedule 7, the information contained in headnote 2(f) of schedule 3 and in the "Tariff Classification Study" is pertinent to the determination. This headnote controls when textile materials are involved. It is agreed the imported merchandise is composed of textile material.

In view of the definition and the legislative history in which Congress states its belief that said definition properly reflects the trade conception of the term "braids," it supplants the common or trade meaning for customs purposes. The court is bound by the language used and has no authority to give meaning to the language other than that conveyed by words, terms or expressions in which the legislative will has been expressed. *Armbee Corporation et al.* v. *United States*, 60 Cust. Ct. 105, C.D. 3278, 279 F. Supp. 438 (1968), *appeal dismissed*, 55 CCPA 115 (1968).

The case of *Sol Kahaner & Bro.* v. *United States*, 71 Cust. Ct. 97, C.D. 4480, 372 F. Supp. 1393 (1973), *aff'd*, 62 CCPA 35, C.A.D. 1141, 509 F. 2d 1186 (1975), cited by both parties is supportive of defendant's position. In the *Kahaner* case, certain merchandise known in the millinery trade as braid was held not to be braid since it was made on a knitting machine and did not have the necessary maypole construction.

Plaintiff's position that braids suitable for making or ornamenting headwear (item 703.80–703.95) and tubular braids with nonelastic core under item 348.00 do not encompass the involved merchandise is correct. The "Tariff Classification Study" (1960) cited supports

this position. The argument, however, is without merit since plaintiff has apparently overlooked item 348.05, TSUS, which provides for other "Braids not suitable for making or ornamenting headwear." This provision would cover braid of the type utilized in the handles of the handbags involved herein.

The fact that the braid is functional does not affect the classification. "Summaries of Trade and Tariff Information," schedule 3, volume 6 (1968), states:

> * * * Braids often are functional components of wearing apparel, household furnishings, furniture upholstery, luggage linings, safety equipment, parachutes, rugs, hoses, electric cords, military insignia, and many other items.

The heading of schedule 3, part 4, "Fabrics of Special Construction or for Special Purposes" which covers braids not suitable for making or ornamenting headwear is not determinative. The heading of the tariff provision utilizing such language is intended as a convenience and has no legal or interpretive significance as set forth in general interpretative rule 10(b).

In view of the foregoing, the imported handbags were properly classified under item 706.20, supra. Defendant's cross-motion for summary judgment is granted and plaintiff's motion for summary judgment is denied.

Judgment will be entered accordingly.