W.R. FILBIN & CO., INC., Plaintiff,

v.

The UNITED STATES, Defendant.

Court No. 86–12–01588.

United States Court of
International Trade.

Aug. 31, 1990.

Barnes, Richardson & Colburn, James S. O'Kelly and Sandra Liss Friedman, New York City, for plaintiff.

Stuart M. Gerson, Asst. Atty. Gen., Washington, D.C., Joseph I. Liebman, Atty. in Charge, Intern. Trade Field Office, Commercial Litigation Branch, Civ. Div., U.S. Dept. of Justice, Nancy M. Frieden, New York City, for defendant.

## OPINION AND JUDGMENT

CARMAN, Judge:

Plaintiff contests the denial of a protest filed under 19 U.S.C. § 1514(a). This Court has jurisdiction under 28 U.S.C. § 1581(a). The Court holds that the merchandise in question is properly classified under 183.05, Tariff Schedules of the United States (TSUS) "Edible preparations not specially

provided for (including prepared meals individually packaged)."

## BACKGROUND

Plaintiff, W.R. Filbin & Co., Inc. is a customhouse broker that was the importer of record of the merchandise in question. Kisko Products (Kisko) was the manufacturer and exporter of the merchandise and appeared as the designated agent of the plaintiff. Plaintiff will be used interchangeably to refer to either Kisko or W.R. Filbin & Co.

The merchandise consists of three products: Kisko Super Pops, Kisko Giant Freezies and Kisko Freezies 36 pack. These items are packaged in rectangular plastic film, and contain a liquid composed mainly of water, corn syrup and other sweeteners. The merchandise can be frozen and eaten by horizontally cutting off the top of the plastic film and squeezing the contents up from the bottom of the packet. The merchandise varies in size and weight as follows: the Super Pops measure approximately 10½ inches by 1¾ inches and contain 1.4 fluid ounces of liquid; the Giant Freezies measure 17 inches by 2 inches and contain 7 fluid ounces of liquid; the Freezies 36 pack consists of 36 individual packets measuring approximately 6 inches by 1¼ inches containing a total of 24 fluid ounces. The 36 individual items are packaged together in a plastic pouch measuring approximately 10 inches by 9 inches. Each package bears the item's name, weight, a list of ingredients in French and English and a picture of a dragon licking its lips and holding what appears to be the product in its frozen state. The 36 pack bears the words "A TASTE TREAT" and "FREEZE THEM AND EAT THEM."

Plaintiff also manufactures a product called Kisko Drinks which consists of a flexible plastic film with two connecting compartments. The smaller compartment contains a straw and some of the liquid. Instructions are printed on this compartment in French and English to "TEAR TOP AND PUSH UP STRAW TO DRINK." The consumer is also directed to "FREEZE IT!/SLUSH IT!" or "SLUSH IT!" The larger compartment holds the majority of liquid which is identical to the liquid in the merchandise at issue except for sodium citrate which was included in the Kisko Drinks from 1982–85, but was not an ingredient of the imported product. The package bears the item's name in French and English, weight, a list of ingredients in French and English, the words "A TASTE TREAT" and a picture of the above-mentioned dragon holding what appears to be a rectangular-shaped replica of the product and drinking from a straw protruding from the right-hand corner of the item. Kisko Drinks have been classified as a beverage under TSUS item 166.40 and are not at issue in the instant case.

Plaintiff filed timely protests pursuant to 19 U.S.C. § 1514(a) contesting the classification of the merchandise under 183.05 TSUS "Edible preparations not specially provided for (including prepared meals individually packaged) ... Other" at a rate of 10% *ad val.* These protests were denied pursuant to 19 U.S.C. § 1515 and plaintiff then filed a timely summons and complaint leading to the instant action. All liquidated duties have been paid.

Plaintiff contends that the proper classification should be under 166.40 TSUS, "Beverages, not specially provided for" at a rate of one cent per gallon.

## CONTENTIONS OF THE PARTIES

Plaintiff contends that (1) the imported merchandise is fit for use as a beverage; (2) even if the imported merchandise were found to be chiefly used as an edible preparation, if the merchandise is also fit to be used as a beverage, it should be classified under item 166.40; and (3) defendant has failed to establish that the imported merchandise is not fit for use as a beverage.

Defendant contends (1) the merchandise consists of freezer bars which are designed, marketed and chiefly used as frozen edible treats, and is, therefore, correctly classified as an edible preparation and (2) plaintiff has not proven that the merchandise is classifiable as a beverage.

## CLASSIFICATIONS

*Present Classification*

183.05 Edible preparations not specially provided for (including prepared meals individually packaged): ... Other ... 10% *ad val.*

*Plaintiff's Requested Classification*

166.40 Beverages, not specially provided for ... 1 cent per gal.

*Pertinent Headnotes*

Schedule 1, Part 12, Subpart B, Headnote 1:

The provisions of this subpart cover only products fit for use as beverages, and do not apply to any product containing 0.5 percent or more of ethyl alcohol by volume or to any product described in subpart A of this part.

Schedule 1, Part 15, Subpart B, Headnote 3:

The term *"edible preparations"* in items 182.90, 182.92, 182.96, 183.00, 183.01, and 183.05 [the classification in the instant case] embraces only substances prepared and chiefly used as a human food or as an ingredient in such food, but such term does not include any substance provided for in schedule 4 (except part 2E thereof) or schedule 5 (except part 1K thereof).

## DISCUSSION

*Fit for Use as Beverages*

Plaintiff contends that the scope of item 166.40 is limited by Headnote 1 of Part 12, Subpart B to products which are suitable for use as beverages in their imported condition and excludes products which are merely fit for beverage purposes, that is, products needing further preparation such as mixing with other ingredients or further processing. Plaintiff merges the term "fit for use" which is included in the headnote with the term "suitable for use" which is not mentioned in the headnote. Defendant also merges these terms to the extent that it claims that plaintiff must show that the merchandise in question is "suitable" for use as a beverage by proving that the merchandise is used "to an extent sufficient to justify a holding that it is fit for such use." *Wah Shang Co. v. United States*, 44 CCPA 155, 159, C.A.D. 654 (1957).

In *Wah Shang*, the Court of Customs and Patent Appeals discussed whether merchandise was fit for beverage use. *Id.* A product which had been classified as a medicinal preparation containing more than 20 percent but not more than 50 percent of alcohol had a revenue tax imposed by the Internal Revenue Service pursuant to a provision covering distilled spirits. *Id.* at 156–57. Plaintiff Wah Shang contended that the tax was improperly imposed. The Court of Customs and Patent Appeals stated in *Wah Shang* that:

the term "fit for beverage use" is not satisfied by a mere possibility of such use, and requires a substantial actual use as a beverage. But the term does not in our opinion require that the chief use of the merchandise shall be as a beverage. It is entirely possible that a liquid chiefly used as a medicinal preparation may also be used as a beverage to an extent sufficient to justify a holding that it is fit for such use. The actions of the collector in classifying the instant merchandise as a medicinal compound, and taxing it as fit for beverage purposes, therefore, were not necessarily inconsistent.

*Id.* at 159.

■ "Suitable for use" as applied in the Customs law means "actually, practically, and commercially fit" for such use. *Kahlen v. United States*, 2 Ct.Cust.App. 206, 208, T.D. 31,947 (1911). For the most part, the term is not used in relation to food or drink items. *See Id.* 2 Ct.Cust.App. 206 (onionskin paper); *Keer, Maurer Co. v. United States*, 46 CCPA 110, C.A.D. 710 (1959) (synthetic gem stones); *American Express Co. v. United States*, 69 Cust.Ct. 209, C.D. 4395, 350 F.Supp. 1402 (1972) (tractors); *but see Dalton Cooper, Inc. v. United States*, 41 Cust.Ct. 271, 276, C.D. 2051 (1958) (lime juice).

■ While plaintiff in the instant case argues that its product is fit for use as a

beverage, it also argues that even if the product's chief use is as an edible preparation, the merchandise should still be classified as a beverage. The Court of Customs and Patent Appeals in *Wah Shang* discussed the fact that a product "chiefly used as a medicinal preparation" may be fit for use as a beverage. The court, however, did not hold that a product whose chief use is a medical preparation should be classified as a beverage simply because it is also fit for use as a beverage. The court noted in the second paragraph of its opinion that "classification and rate of duty are not questioned here by either party, and the sole issue to be determined is whether the internal revenue tax above referred to was properly imposed." 44 CCPA at 156. Likewise in the instant case, the mere fact that a product may be fit for use as a beverage does not necessarily require that the merchandise be classified as a beverage.

Defendant argues that fit for use as a beverage requires "substantial actual use as a beverage" as stated in *Wah Shang*. *Id.* at 159. Defendant notes that its expert witness, the national sales manager of a domestic counterpart of Kisko, testified as to the insubstantial and incidental use of the merchandise as a beverage. Trial Transcript (Tr.) at 150. This witness stated that the merchandise in question was not designed to be consumed as a drink, unlike the Kisko Drinks which includes a straw. *Id.*

Plaintiff's witness, the president of Kisko, affirmed at trial that he stated at deposition that the product sells better when it's frozen. Tr. at 73. In addition, another of plaintiff's witnesses who sold Kisko products to wholesalers and other businesses which in turn sold the Kisko products to retailers other than supermarkets testified that his daughter and his workers drank the merchandise in question. Tr. at 114. However, this witness stated at trial and deposition that he had little personal knowledge of how the product was consumed since he spent up to twelve hours a day at his office and had no contact with retailers. Tr. at 122; Defendant's Exhibit GG (Transcript of deposition) at 88.

The Court holds that plaintiff has not established that the use of its merchandise as a beverage is "a substantial actual use" as required by the term "fit for use as beverages" in Headnote 1 of Part 12, Subpart B. *Wah Shang*, 44 CCPA at 159. The Court finds that the substantial use of the merchandise is as a frozen ice pop. Use of the product as a beverage is incidental and does not rise to the level of use necessary to satisfy the substantial actual use requirement called for by the term "fit for use as beverages." Plaintiff markets a separate product, Kisko Drinks, with a straw and instructions to "PUSH UP STRAW TO DRINK." Plaintiff's Super Pops, Giant Freezies and 36 pack bear no instructions to drink the products. The product names of the merchandise in question evoke the term Freezies which connotes a frozen item to be eaten. Plaintiff argues that its Giant Freezies cannot be eaten before melting and that therefor the product must be drunk. If this is indeed the case, the Court once again notes that the fact that an item can be drunk does not necessarily require classification of that product as a beverage.

### Relative Specificity

General Interpretative Rule 10(c) provides in part that "an imported article which is described in two or more provisions of the [tariff] schedules is classifiable in the provision which most specifically describes it...." Plaintiff argues that Customs classified the merchandise as an edible preparation based on the assumption that it is chiefly used as a frozen confection. Plaintiff claims that the imported merchandise is marketed to be consumed in liquid form as well as in a frozen or partially frozen form and that therefore, it is described by both provisions in question.

The Court has found as a matter of fact that the merchandise in question is not classifiable as a beverage. Plaintiff has not established that its merchandise has "a substantial actual use" as a beverage as required by the term "fit for use as beverages." In short, the Court has found as a

matter of fact that the merchandise is a food and not a beverage. Since the merchandise is not described in two provisions of the tariff schedule, the rule of specificity does not apply in the instant case.

*Did Defendant Fail to Establish Merchandise Not Fit for Use as Beverages?*

 Plaintiff further contends that the government failed to establish that the merchandise is not fit for use as a beverage. Defendant has no burden to disprove that the merchandise is fit for use as a beverage. Plaintiff must overcome the statutory presumption of the correctness of Customs' classification of the merchandise under 28 U.S.C. § 2639(a)(1) (1988). *See also Jarvis Clark Co. v. United States*, 2 Fed.Cir. (T) 70, 75, 733 F.2d 873, 878, *reh'g denied* 2 Fed.Cir. (T) 97, 739 F.2d 628 (1984). The Court holds that this statutory presumption has not been overcome by plaintiff since it has failed to establish that

its merchandise has "a substantial actual use" as a beverage as required by the term "fit for use as beverages" in Headnote 1 of Schedule 1, Part 12, Subpart B. *Wah Shang*, 44 CCPA at 159.

## CONCLUSION

The Court holds that the merchandise in question is properly classified under 183.05, TSUS, "Edible preparations not specially provided for (including prepared meals individually packaged)." The action of plaintiff is dismissed and the classification of Customs is affirmed.