W.R. FILBIN & CO., INC.,
Plaintiff–Appellant,

v.

The UNITED STATES, Defendant–
Appellee.

No. 91–1049.

United States Court of Appeals,
Federal Circuit.

Sept. 25, 1991.

Sandra Liss Friedman, Barnes, Richardson & Colburn, New York City, argued, for plaintiff-appellant. With her on the brief was, James S. O'Kelly.

Nancy M. Frieden, Commercial Litigation Branch, Dept. of Justice, New York City, argued for defendant-appellee. With her on the brief were, Stuart M. Gerson, Asst. Atty. Gen., David M. Cohen, Director and Joseph I. Liebman, Atty. in Charge, Intern. Trade Field Office. Also on the brief was, Stephen Berke, U.S. Customs Service, of counsel.

Before NIES, Chief Judge, FRIEDMAN, Senior Circuit Judge, and MICHEL, Circuit Judge.

MICHEL, Circuit Judge.

W.R. Filbin & Co., Inc. ("Filbin") appeals the August 31, 1990 judgment of the United States Court of International Trade ("trade court") holding that the imported merchandise was properly classified under 183.05, Tariff Schedules of the United States ("TSUS"). *W.R. Filbin & Co. v. United States*, 744 F.Supp. 289 (Ct. Int'l Trade 1990). Because the trade court applied the correct legal test and its findings of fact were not clearly erroneous, it properly upheld the Customs Service's classification of the imported merchandise as an edible preparation rather than as a beverage. Accordingly, we affirm.

## BACKGROUND

Filbin imports what are later sold as frozen ice pops—the merchandise in dispute—which are made by Kisko Products Corporation ("Kisko"). Kisko appeared as the real party-in-interest because it was responsible for the payment of duties on the merchandise.

The products involved are: Kisko Super Pops, Kisko Giant Freezies and Kisko Freezies 36 Pack. All are packaged in plastic sleeves, containing a liquid composed mainly of water, corn syrup and other sweeteners. The products can be eaten by horizontally cutting off one end of the plastic sleeve and squeezing the contents up from the other end. The three products vary primarily in size and weight. The packaging of each product bears a picture of a dinosaur or dragon licking its lips and holding a likeness of the product in its frozen state. The Kisko Freezies 36 Pack also includes the instruction "FREEZE THEM AND EAT THEM."

Kisko also manufactures a product called Kisko Drinks—not in issue here—which is also packaged in a plastic sleeve, but with two connecting compartments. The smaller compartment contains a straw and some of the liquid. Directions printed on this compartment state, "TEAR TOP AND PUSH UP STRAW TO DRINK" and "FREEZE IT/SLUSH IT" or "SLUSH IT!" The larger compartment contains the rest of the liquid which is composed of the same ingredients as the liquid in the three products at issue plus sodium citrate. The package bears a picture of the dinosaur or dragon holding a replica of the product and drinking from the straw. Kisko Drinks have been classified as a beverage under TSUS item 166.40, subject to a tariff of one cent per gallon.

Timely protests were filed pursuant to 19 U.S.C. § 1514(a) (1988) contesting the classification of the merchandise in question under TSUS item 183.05, "Edible preparations not specially provided for ...," dutiable at a rate of 10 percent *ad valorem*.

After the protests were denied pursuant to 19 U.S.C. § 1515 (1988), plaintiff filed a timely summons and complaint in the trade court, which, following a trial, held that the merchandise is properly classified under 183.05 TSUS.

Pursuant to 28 U.S.C. § 1295(a)(5) (1988), we have jurisdiction over the appeal.

## DISCUSSION

### I

### A

Kisko argues that the trade court erred in holding that its merchandise was properly classified as an edible preparation under 183.05 TSUS, instead of as a beverage under 166.40 TSUS. Kisko first contends that the trade court misconstrued the determinative term "fit for use as beverages" and thus applied the wrong legal standard.

■ The meaning of a specific tariff term is a question of law, and therefore subject to de novo review. *E.g., Daw Indus. v. United States*, 714 F.2d 1140, 1142, 1 Fed.Cir. (T) 146, 148 (1983). The provision at issue, Headnote 1 of Schedule 1, Part 12, Subpart B, states in pertinent part: "The provisions of this subpart cover only products fit for use as beverages ...." Here, the trade court, relying on *Wah Shang Co. v. United States*, 44 CCPA 155, 159 (1957), did apply the correct legal standard for determining whether merchandise is "fit for use as beverages": substantial actual use. *Filbin*, 744 F.Supp. at 292. In *Wah Shang*, the Court of Customs and Patent Appeals stated that "the term 'fit for beverage use' is not satisfied by a mere possibility of such use, and requires a *substantial actual use* as a beverage." 44 CCPA at 159 (emphasis added).

■ Neither party disputes that the term "fit for use" requires a "substantial actual use" and that that term means more than incidental use but not chief use. Kisko contends, however, that "[t]he trial court seems to be equating substantial use

with chief use." Brief for Appellant at 11. But it is clear that the trade court did just the opposite, citing *Wah Shang* for the proposition that "the term 'fit for beverage use' ... does not in *our* opinion require that the chief use of the merchandise shall be as a beverage." *Filbin*, 744 F.Supp. at 291 (emphasis added). Indeed, the trade court emphasized that "substantial actual use," *not* chief use, is all that is required for merchandise to be "fit for use" as a beverage. *Id.* at 292. Therefore, the trade court committed no error in applying *Wah Shang* and defining "fit for use as beverages."

### B

Kisko also argues that, even assuming a proper definition, the trade court erred in its application of the "fit for use" test, i.e., "substantial actual use," to the facts of this case.

■ The ultimate issue of whether particular merchandise has been classified under the appropriate provision is a question of law. *See Amersham Corp. v. United States*, 728 F.2d 1453, 1455, 2 Fed.Cir. (T) 33, 34 (1984). However, whether a particular product fits a properly defined tariff term is a question of fact reversible only for clear error. *Daw Indus.*, 714 F.2d at 1142. Generally, the "clearly erroneous" standard of review applies even when "findings do not rest on credibility determinations, but are based instead on physical or documentary evidence or inferences from other facts." *Anderson v. City of Bessemer City*, 470 U.S. 564, 574, 105 S.Ct. 1504, 1511–12, 84 L.Ed.2d 518 (1985). However, "[w]hen findings are based on determinations regarding the credibility of witnesses, Rule 52(a)[1] demands even greater deference to the trial court's findings." *Id.* at 575, 105 S.Ct. at 1512.

■ The trade court found that the substantial actual use of the products is as a frozen ice pop and that any use as a beverage is at most incidental. *Filbin*, 744

---

1. Fed.R.Civ.P. 52(a) corresponds exactly to Rule 52(a) of the Rules of the Court of International Trade.

F.Supp. at 292. In making these findings, the trade court relied both on testimony of witnesses and on physical evidence. The trade court specifically considered the experience and credibility of both parties' witnesses. The trade court also considered other evidence: Kisko Drinks, which Kisko obviously uses to target the beverage market, as the straw and picture make clear. In addition, Kisko's Super Pops, Giant Freezies and Freezies 36 Pack bear no instructions to drink the product, as opposed to Kisko Drinks, which do. And while it calls its beverage product "Kisko Drinks," for the products at issue, Kisko uses the term "Freezies" or "Pops," which implies a frozen product meant to be eaten.

There is thus no clear error in the trade court's application of the term "fit for use" as provided in Headnote 1 of Schedule 1, Part 12, Subpart B.

## II

Kisko also contends that the trade court totally ignored its evidence, particularly the testimony of two witnesses and certain physical evidence. Contrary to Kisko's assertions, the trade court not only considered the testimony of Kisko's two witnesses, but expressly discussed it. *Filbin*, 744 F.Supp. at 292. For example, the trade court noted that "[*Kisko's*] witness, the president of Kisko, affirmed at trial that he stated at deposition that the product sells better when it's frozen." *Id.* The trade court also considered the testimony of Kisko's other witness, who testified that at least some people drink the products in question, but disparaged the credibility of this witness because of his lack of contact with retailers. *Id.* The trade court also considered Kisko's physical evidence, but chose to rely instead on other physical evidence, including the Kisko Drinks exhibit.

In view of the trade court's express assessment of the testimony of Kisko's two witnesses and the physical evidence, Kisko's disagreement can only be with the trade court's unfavorable treatment of both. As noted above, however, we cannot conclude that the trade court clearly erred in weighing the conflicting evidence.

## CONCLUSION

We hold that in order for merchandise to be classified as "fit for use" as a beverage under Headnote 1 of Schedule 1, Part 12, Subpart B, it must have a "substantial actual use" as a beverage, and Kisko's products at issue, sold and promoted in frozen form, failed to satisfy this standard and thus were properly classified under 183.05 TSUS as edible preparations rather than as beverages. Accordingly, the judgment of the Court of International Trade must be and is

AFFIRMED.