**Slip Op. 08-25**

**UNITED STATES COURT OF INTERNATIONAL TRADE**

**BEFORE: SENIOR JUDGE NICHOLAS TSOUCALAS**

‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗
                                         :
WARNER-LAMBERT COMPANY,                  :
                                         :
              Plaintiff,                 :
                                         :        Consolidated
              v.                         :        Court No.:  06-00104
                                         :
UNITED STATES,                           :
                                         :
              Defendant.                 :
                                         :
‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗  :


**Held**: Plaintiff's motion for summary judgment denied. Defendant's motion for summary judgment is also denied.


                              Dated:  March 3, 2008


<u>Rode & Qualey</u>, (<u>Patrick D. Gill</u>) for Warner-Lambert Company, Plaintiff.

<u>Jeffrey S. Bucholtz</u>, Acting Assistant Attorney General; <u>Barbara S Williams</u>, Attorney-in-Charge, International Trade Field Office, <u>Bruce N. Stratvert</u>, Civil Division, Commercial Litigation Branch, United States Department of Justice, Defendant.


                              **OPINION**

**TSOUCALAS, Senior Judge:**    Plaintiff Warner-Lambert Company ("Plaintiff" or "WLC") challenges the classification of Certs® Cool Mint Drops by the United States Bureau of Customs and Border

Protection[1] ("Defendant" or "Customs") under Heading 1704 of the Harmonized Tariff Schedule of the United States ("HTSUS") covering sugar confectionery.[2] Plaintiff maintains that the merchandise at issue is properly classified under Heading 3306, HTSUS, as "preparation for oral or dental hygiene." This matter is before the Court on cross-motions for summary judgment pursuant to USCIT R. 56.

## JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1581 (2000).

## STANDARD OF REVIEW

On a motion for summary judgment, the Court must determine whether there are any genuine issues of fact that are material to the resolution of the action. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is genuine if it might

---

[1] The Bureau of Customs and Border Protection was renamed United States Customs and Border Protection, effective March 31, 2007. See Name Change From the Bureau of Immigration and Customs Enforcement to U.S. Immigration and Customs Enforcement, and the Bureau of Customs and Border Protection to U.S. Customs and Border Protection, 72 Fed. Reg. 20,131 (April 23, 2007).

[2] Heading 1704, HTSUS, covers "[s]ugar confectionery (including white chocolate), not containing cocoa."

affect the outcome of the suit under the governing law.  See id.
Accordingly, the Court may not decide or try factual issues upon a
motion for summary judgment.  See Phone-Mate, Inc. v. United
States, 12 CIT 575, 577, 690 F. Supp. 1048, 1050 (1988).  When
genuine issues of material fact are not in dispute, summary
judgment is appropriate if a moving party is entitled to judgment
as a matter of law.  See USCIT R. 56; see also Celotex Corp. v.
Catrett, 477 U.S. 317, 322-23 (1986).

## DISCUSSION
### I. Background

Plaintiff WLC imported Certs® Cool Mint Drops and Certs®
Powerful Mints.  See Complaint ¶ 2; Def.'s Resp. Amended Complaint
¶ 2.  The active ingredient of both Certs® Cool Mint Drops and
Certs® Powerful Mints is Retsyn®, which consists of partially
hydrogenated cottonseed oil and copper gluconate.  See Complaint ¶¶
9, 10, 26; Def.'s Resp. Amended Complaint ¶¶ 9, 10, 26.  The main
difference between Certs® Cool Mint Drops and Certs® Powerful Mints
is that the former contains sugar and the latter is sugar-free.
See Complaint ¶ 23; Def.'s Resp. Amended Complaint ¶ 23.

Customs liquidated Certs® Powerful Mints and Certs® Cool Mint
Drops under subheading 1704.90.35.90 as a sugar confectionery.  See
Pl.'s Statement Material Facts Not Dispute ("WLC's Facts") ¶ 29;

Def.'s Resp. Pl.'s Statement Material Facts Not Dispute ("Customs' Resp.") ¶ 29.  WLC timely protested pursuant to 19 U.S.C. § 1514 challenging classification of its merchandise.  See Complaint, ¶¶ 3, 4; Def.'s Resp. Amended Complaint ¶¶ 3, 4.

The sugar-free Powerful Mints were considered in Warner-Lambert Co. v. United States, 28 CIT 788, 343 F. Supp. 2d 1315 (2004), reversed by, 407 F.3d 1207 (Fed. Cir. 2005) (hereinafter "test case").  Before the Court of International Trade ("CIT"), WLC argued that Powerful Mints were a sugar-free product that should be classified under HTSUS subheading 3306.90.00 as preparations for oral or dental hygiene that are free of duty.  See Warner-Lambert Co., 28 CIT at 788, 343 F. Supp. 2d at 1316.  Customs countered that if the Court finds that the merchandise at issue is indeed sugar-free, then the merchandise should be classified under HTSUS subheading 2106.90.99 as food preparations not elsewhere specified or included, dutiable at the rate of 6.4 percent ad valorem.  See Warner-Lambert Co., 28 CIT at 788-89, 343 F. Supp. 2d at 1316-17.

Following a bench trial, the CIT determined, inter alia, that "Certs® Powerful Mints are marketed, advertised and primarily purchased by consumers as breath mints. Plaintiff's expert testified that the Retsyn®, contained in the subject merchandise, combats bad breath since copper gluconate, cottonseed oil and natural flavoring neutralize and mask bacteria in the mouth which

commonly cause bad breath.  Moreover, consumption of the product results in an increase in salivation which causes a physical rinse-out or dislodgement (purging) of accumulated volatile sulfur compounds or a reduction of the number of bacteria in the mouth (specifically, a result of swallowing)."  Warner-Lambert Co., 28 CIT at 793, 343 F. Supp. 2d at 1320.  However, relying on a monogram issued by the FDA, the CIT determined that "[o]nly antimicrobial measures, such as using a germ killing mouthwash 'intended to treat or prevent disease,' aide in the preservation of oral health."  Warner-Lambert Co., 28 CIT at 793, 343 F. Supp. 2d at 1320.  The CIT accordingly held that the subject product cannot be considered a preparation for oral hygiene.  Warner-Lambert Co., 28 CIT at 794, 343 F. Supp. 2d at 1321.  On appeal, the United States Court of Appeals for the Federal Circuit ("CAFC") reversed the CIT and held that Certs® Powerful Mints are properly classifiable under Heading 3306, HTSUS.  See Warner-Lambert Co., 407 F.3d 1207, 1211 (Fed. Cir. 2005).

Following the test case, Customs denied protests that are the subject of the instant action on the ground that the test case "applied to sugar free mints only."  See WLC's Facts ¶ 29; Customs' Resp. ¶ 29.  The instant action concerns proper classification of WLC's entries, which Plaintiff purports to be Certs® Cool Mint Drops.  See Complaint ¶ 2; Def.'s Resp. Amended Complaint ¶ 2.

Plaintiff filed a Complaint in this action on April 18, 2007 and filed an Amended Complaint on May 10, 2007. See WLC's Facts ¶¶ 6, 7; Customs' Resp. ¶¶ 6, 7. Defendant filed an Answer to the Amended Complaint on July 6, 2007. See WLC's Facts ¶ 8; Customs' Resp. ¶ 8. All liquidated duties with respect to the subject entries were paid prior to the commencement of this action. See Complaint ¶ 5; Def.'s Resp. Amended Complaint ¶ 6. On August 14, 2007, the record of the test case was incorporated in the record of this case.

## II. Applicability Of The Principle Of Stare Decisis

Plaintiff contends that the merchandise at issue, Certs® Cool Mint Drops, was the subject of the test case and therefore is classifiable under Heading 3306 as a matter of law. See Mem. Supp. Pl.'s Mot. Sum. J. ("WLC's Brief") at 1. According to Plaintiff, the test case reviewed Headquarters Ruling 963764, which involved both Certs® Powerful Mints containing artificial sweetner and Certs® Cool Mint Drops containing sugar. See id. at 2-3. Plaintiff states that in the Headquarters Ruling Customs treated both Certs® Powerful Mints and Certs® Cool Mint Drops as the same in concluding that they are not classifiable under Heading 3306, HTSUS. See id. at 6.

Plaintiff goes on to argue that the CAFC similarly treated both products as one in rejecting Customs' analysis. See id. Citing to the language of the CAFC's opinion in the test case, Plaintiff states that the CAFC rejected Customs' classification of both Certs® Powerful Mints and Certs® Cool Mint Drops.[3] See id. at 4-5. Plaintiff claims that Customs erroneously denied the protests in this action on the ground that only Certs® Powerful Mints were the subject of the test case. See id. at 5-6. In addition, Plaintiff argues that the principle of stare decisis should be invoked in granting summary judgment in its favor because this action involves the same parties, same merchandise and same legal issue. See id. at 7-8.

Customs disagrees with Plaintiff's contentions and argues that the test case involved only Certs® Powerful Mints based on the

---

[3]     Plaintiff specifically relies on the following portion of the CAFC's opinion in the test case:

> To justify its proposed classification under headings 17.04 or 21.06, Customs stated simply: "The Certs Cool Mint Drops consist essentially of sugar." HQ 963764, at 7. This dismissive analysis neglects not only those chemical components of the mints which achieve the breakdown and absorption function, but also the cleansing effect of the purging activity. In sum, Customs' proposed classification carried little power to persuade because it overlooked some characteristics of the imports and read the term "hygiene" too narrowly to remain consistent with the Explanatory Notes. Warner-Lambert Co., 407 F.3d at 1210-11.

entry papers, pleadings and decision of this Court.  See Def.'s Mem. Supp. Mot. Sum. J. Opp'n Pl.'s Mot. Sum. J. ("Def.'s Brief") at 17.  Because Cool Mint Drops were not at issue in the test case, Customs argues that neither this Court nor the CAFC had subject matter jurisdiction over classification of the subject merchandise. See Def.'s Brief at 17.  Customs suggests that the CAFC mentioned Certs® Cool Mint Drops in its decision only for the limited purpose of illustrating the weakness of the Headquarters Ruling.  See id. at 18.  Customs thus contends that the CAFC's decision in the test case should not be read as the same as a decision on Certs® Cool Mint Drops since they were not reviewed in the test case and the two products are not interchangeable.  See id.

Moreover, Customs argues that courts have permitted relitigation of classification cases.  See id. at 19.  Customs further argues that the decision of the test case is not stare decisis because the subject merchandise is materially different than the sugar-free Certs® Powerful Mints reviewed in the test case, and the two cases involve different legal issues.  See id. at 21-22.

The Court finds no merit to Plaintiff's argument that the test case ruled on the classification of Certs® Cool Mint Drops.  "A pleading which sets forth a claim for relief . . . shall contain . . . (2) a short and plain statement of the claim showing that the

pleader is entitled to relief, and (3) a demand for judgment for the relief the pleader seeks." USCIT R. 8(a). Plaintiff in the test case did not set forth a claim for relief with respect to Certs® Cool Mint Drops and thus it failed to satisfy the pleading requirements with respect to Certs® Cool Mint Drops. Indeed, WLC alleged in paragraph nine of the complaint filed in the test case that "[t]he imported merchandise in issue is a sugar-free product which cannot be classified with the sugar-based products of Chapter 17 and specifically those provided for under subheading 1704.90.35." Complaint at 2, Warner-Lambert Co. v. United States, 343 F. Supp. 2d 1315 (2004)(Court No. 02-00254). Although it is true that the Headquarters Ruling reviewed both Certs® Powerful Mints and Certs® Cool Mint Drops, Plaintiff's complaint was limited to Certs® Powerful Mints and Plaintiff sought relief only with respect to Certs® Powerful Mints. See id. The trial court specifically made a finding of fact that "[t]he merchandise at issue is Certs Powerful Mints." Warner-Lambert Co., 28 CIT at 789, 343 F. Supp. 2d at 1317. The CAFC "[held] that Warner-Lambert's Certs® Powerful Mints properly fall under heading 33.06 of the HTSUS." Warner-Lambert Co., 407 F.3d at 1211. Although Plaintiff could have sought relief with respect to Certs® Cool Mint Drops in the test case since the Headquarters Ruling reviewed both products, Plaintiff chose not to do so. Accordingly, Plaintiff cannot now argue the test case encompassed Certs® Cool Mint Drops.

    The Court also finds no merit to Plaintiff's argument that stare decisis requires the Court to rule in its favor.  Stare decisis means "not to disturb what is settled."  United States v. Mercantil Distribuidora, S.A., 45 C.C.P.A. 20, 23 (1957).  "[T]he doctrine of stare decisis applies to only legal issues and not issues of fact[.]"  Avenues In Leather v. United States, 423 F.3d 1326, 1331 (Fed. Cir. 2005).  The determination of whether the subject merchandise falls within the description of a tariff provision is a question of fact.  See id.

    In the instant matter, stare decisis requires that this Court follow the CAFC's legal determination that Heading 3306 does not require an antimicrobial activity and that "chemical components . . . which achieve the breakdown and absorption function" and "the cleansing effect of the purging activity" of Certs® Powerful Mints are sufficient for their classification under Heading 3306. Warner-Lambert Co., 407 F.3d at 1210-11.  Customs does not contend that it seeks to relitigate that issue, but seeks to introduce evidence that Certs® Cool Mint Drops are dissimilar from the merchandise considered in the test case.  Although this action and the test case involve the same parties and the subject merchandise are similar to the extent that they are both breath mints containing Retsyn®, there are significant differences between the merchandise at issue.  The two products are marketed under different names and contain different ingredients.  Moreover, the

legal and factual issues to be resolved are different.  Thus, the Court rejects Plaintiff's argument that <u>stare decisis</u> requires a judgment in its favor.


### III. Classification Of Certs® Cool Mint Drops

Determining whether imported merchandise was classified under the appropriate tariff provision entails a two-step process.  <u>See</u> <u>Sabritas, S.A. de C.V. v. United States</u>, 22 CIT 59, 61, 998 F. Supp. 1123, 1126 (1998).  First, the proper meaning of specific terms in the tariff provision must be ascertained.  <u>See</u> <u>Sports Graphics, Inc. v. United States</u>, 24 F.3d 1390, 1391 (Fed. Cir. 1994).  Second, whether the imported merchandise falls within the scope of such terms, as properly construed, must be determined. <u>See</u> <u>id.</u>  The first step is a question of law and the second is a question of fact.  <u>See</u> <u>id.</u>; <u>see</u> <u>also</u> <u>Universal Elecs., Inc. v. United States</u>, 112 F.3d 488, 491 (Fed. Cir. 1997).

"Applied in numerical order, the [General Rules of Interpretation] of the HTSUS and the Additional United States Rules of Interpretation govern the proper classification of merchandise entering the United States."  <u>N. Am. Processing Co. v. United States</u>, 236 F.3d 695, 698 (Fed. Cir. 2001) (<u>citing</u> <u>Carl Zeiss, Inc. v. United States</u>, 195 F.3d 1375, 1379 (Fed. Cir. 1999)).  General Rules of Interpretation ("GRI") 1 states that "classification shall

be determined according to the terms of the headings and any relative section or chapter notes." Gen. R. Interp. 1, HTSUS. GRI 2(b) instructs that "[t]he classification of goods consisting of more than one material or substance shall be [determined] according to the principles of rule 3." Gen. R. Interp. 2, HTSUS. GRI 3 instructs that if goods can be classified on their face under more than one heading, then classification shall be based upon the following:

> (a) The heading which provides the most specific description shall be preferred to headings providing a more general description. However, when two or more headings each refer to part only of the materials or substances contained in mixed or composite goods or to part only of the items in a set put up for retail sale, those headings are to be regarded as equally specific in relation to those goods, even if one of them gives a more complete or precise description of the goods.
>
> (b) Mixtures, composite goods consisting of different materials or made up of different components, and goods put up in sets for retail sale, which cannot be classified by reference to 3(a), shall be classified as if they consisted of the material or component which gives them their essential character, insofar as this criterion is applicable.
>
> (c) When goods cannot be classified by reference to 3(a) or 3(b), they shall be classified under the heading which occurs last in numerical order among those which equally merit consideration.  Gen. R. Interp. 3, HTSUS.

## A. Classification Under Heading 1704

Customs argues that it properly classified Certs® Cool Mint Drops under Heading 1704 by application of GRI 3(b) because they constitute a composite article consisting of Retsyn® and sugar

confectionery. See Def.'s Brief at 5-6. Applying GRI 3(b), Customs argues that sugar, which makes up over 90 percent of the article, imparts the product's essential character. See id. at 6. Pointing to evidence that "sugar clearly plays a negative role with respect to oral and dental hygiene" Customs argues that this characteristic excludes classification of Certs® Cool Mint Drops under Heading 3306 as oral or dental hygiene product. See id. at 6-7.

Plaintiff disputes Customs' contentions and argues that "composite articles under GRI 3(b) are articles with discrete components which are 'classifiable under two or more headings.'" Pl.'s Reply Def.'s Mem. Support Mot. Sum. J. Opposition Pl.'s Mot. Summ. J. ("WLC's Reply") at 10. According to Plaintiff, Certs® Cool Mint Drops are not a composite article subject to GRI 3(b) because they are only classifiable under Heading 3306. See WLC's Reply at 11. Even if this Court were to find that Certs® Cool Mint Drops are a composite article, Plaintiff maintains that their essential character as a preparation for oral hygiene would be at least co-equal with the confectionery element, and under GRI 3(c), the subject merchandise must be classified under Heading 3306, which appears last in the HTSUS. See id. at 11-12.

The Court finds that Certs® Cool Mint Drops are a "[m]ixture or composite good[] consisting of different materials" insofar as they consist of Retsyn® and sugar confectionery and finds that GRI

3(b) applies to their proper classification.[4]  Based on the CAFC's decision in the test case, Retsyn® is classifiable under Heading 3306 as an oral or dental hygiene product based on its ability to "achieve the breakdown and absorption function" and "the cleansing effect of the purging activity."  Warner-Lambert Co., 407 F.3d at 1210.  The sugar portion of Certs® Cool Mint Drops is likewise classifiable under Heading 1704 as sugar confectionery.

GRI 3(b) instructs that such "[m]ixtures [or] composite goods consisting of different materials or made up of different components . . . shall be classified as if they consisted of the material or component which gives them their essential character."  Determination of the essential character is an issue of fact.  See Structural Indus., Inc. v. United States, 356 F.3d 1366, 1370 (Fed. Cir. 2004) (citing Pillowtex Corp. v. United States, 171 F.3d 1370, 1376 (Fed. Cir. 1999)).

Here the parties disagree as to the essential character of the subject merchandise.  Defendant maintains that Certs® Cool Mint Drops consist of over 90% sugar and that sugar imparts the essential character.  Moreover, Defendant put forth evidence that sugar is in fact detrimental to oral and dental hygiene because it

---

[4]     The Court finds no merit to Plaintiff's argument that GRI 3(b) is applicable to only merchandise consisting of discrete components.  See, e.g., Cargill, Inc. v. United States, 28 CIT 401, 318 F. Supp. 2d 1279 (2004) (deodorizer distillate imported with a mixture of fatty acids and tocopherols).

"provides food for bacteria which induces inflammation of the gums and leads to periodontal disease." Def.'s Brief at 6. On the other hand, Plaintiff contends that Retsyn® imparts the essential character. Alternatively, Plaintiff argues that the essential character of Retsyn® is at least co-equal to that of sugar, and application of GRI 3(c) results in classification of the subject merchandise under Heading 3306.

A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A disputed fact is material if it could affect the suit's outcome under the governing law. See id. Here, the parties have a genuine dispute as to the essential character of the subject merchandise, which is a material fact, and as such, further factual finding is necessary. See, e.g., Phone-Mate, Inc. v. United States, 12 CIT 575, 577, 690 F. Supp. 1048, 1050 (1988) ("The court may not resolve or try factual issues on a motion for summary judgment") (citation omitted).

**B. Classification Under Heading 3306**
**1) Terms Of The Heading And Chapter Notes**

Customs alternatively argues that Certs® Cool Mint Drops must be excluded from Heading 3306 upon application of rule 1(a) of the Additional U.S. Rules of Interpretation ("ARIs"), which govern

tariff classification of imported merchandise under use provisions.[5]  See Def.'s Brief at 7-8.  Customs asserts that Heading 3306 providing for "preparations for oral and dental hygiene" is a use provision and that Heading 3306 must be read to mean preparation for use in oral and dental hygiene.  See id. at 9.

Customs goes on to argue that proper application of ARI 1(a) requires determination of the class or kind to which the imported goods belong and the principal use of that class or kind of goods at, or immediately prior to the date of importation.  See id. at 10-16.  Customs explains that the relevant factors to consider in making such determinations are:  (1) general physical characteristics of the merchandise, (2) expectation of the ultimate purchaser, (3) use in the same manner as merchandise which defines the class, (4) practicality of such use, and (5) the channels of trade, environment of sale and recognition in the trade.  See id. at 11-16.  Following an analysis of each factor, Customs contends

---

[5]    ARI 1 provides:

In the absence of special language or context which otherwise requires-

(a)  [A] tariff classification controlled by use (other than actual use) is to be determined in accordance with the use in the United States at, or immediately prior to, the date of importation, of goods of that class or kind to which the imported goods belong, and the controlling use is principal use[.]

that Certs® Cool Mint Drops are in the same class or kind as chewing gums and mints and argues that they should be excluded from Heading 3306. See id. at 16.

As a threshold matter, Plaintiff opposes Defendant's principal use argument on the ground that Defendant did not raise this argument in the test case.[6] See WLC's Reply at 12. In responding to the substance of Customs' contention, Plaintiff agrees that Heading 3306 is a use provision, but argues that it is a special type of use provision that requires examination of whether merchandise is "suitable for use and actually, practically, and commercially fit for use as a preparation for oral hygiene." Id. at 14. Relying on the CAFC's decision in the test case, Plaintiff states that the CAFC found that the merchandise meets the criteria. See id. at 14.

For the reasons discussed herein, the Court finds that Heading 3306 cannot be excluded without further findings of fact.

_____

[6]     The Court finds this argument meritless. Customs is not barred from raising new arguments in this case since the subject merchandise was not considered in the test case. Even if Certs® Cool Mint Drops were reviewed in the test case, Customs would still be permitted to raise new arguments subject to the principle of stare decisis. See, e.g., DaimlerChrysler Corp. v. United States, 442 F.3d 1313, 1321 (Fed. Cir. 2006) (stating that "the typical res judicata rules do not apply in protest cases" and that "collateral estoppel does not prevent an importer from successive litigation over the classification of merchandise, even when the subsequent importations involve the same issues of fact and the same questions of law.") (citations and internal quotations omitted).

Plaintiff's proposed alternative, Heading 3306, provides for "preparations for oral or dental hygiene, including denture fixative pastes and powders; yarn used to clean between the teeth (dental floss), in individual retail packages."  Note 3 to Chapter 33 provides that "Headings 3303 to 3307 apply, inter alia, to products, whether or not mixed (other than aqueous distillates and aqueous solutions of essential oils), suitable for use as goods of these headings and put up in packings of a kind sold by retail for such use."  (emphasis added).

Applying GRI 1 and thus looking to the terms of the Heading and the relevant chapter notes, Certs® Cool Mint Drops are classifiable under Heading 3306 if they are "suitable for use" as an oral or dental hygiene product.[7]  "The words 'suitable for use,' as applied in the Customs law means 'actually, practically, and commercially fit' for such use."  United States v. F. W. Myers & Co., Inc., 60 C.C.P.A. 134, 135, 476 F.2d 1377, 1378 (citations omitted).  "Such suitability does not require that the merchandise be chiefly used for the stated purpose, but it does require more than 'evidence of a casual, incidental, exceptional, or possible use.'" See id.; see also W.R. Filbin & Co., Inc. v. United States, 14 CIT 590, 744 F. Supp. 289 (1990).

_____

[7]  The Chapter Notes here instruct that this is a use provision applicable to products suitable for use under Heading 3306.  Therefore, here, there is special language or context which excludes the application of ARI 1.

The parties disagree as to whether Certs® Cool Mint Drops are "actually, practically, and commercially fit" for use as an oral or dental hygiene product. Plaintiff relies on the CAFC's decision in the test case to support its position that Certs® Cool Mint Drops are "actually, practically, and commercially fit" for use as an oral or dental hygiene product. Defendant maintains that "Certs Cool Mint Drops contain massive amount of sugar which renders them unsuitable for use for oral or dental hygiene." The Court thus finds that this is a second genuine dispute of material fact. Without further factual finding, Heading 3306 cannot be excluded.

**2) Explanatory Note To Heading 3306**

Plaintiff alternatively argues that the subject merchandise is an oral perfume within the meaning of the Explanatory Note to Heading 3306 and is classifiable as a preparation for oral hygiene by reason of the combination of the masking function with the purging and neutralizing functions of the Retsyn®. See WLC's Reply at 19-20. Referring to expert testimony from the test case, Plaintiff argues that "the masking function of the Certs products serves to perfume the odor from the volatile sulfur compounds, and, as such, the products are oral perfumes." Id. at 20. Plaintiff suggests that the CAFC relied on the Explanatory Note in reaching its decision in the test case. See id.

Customs argues that the Court should give little or no weight to the Explanatory Note specifying "oral perfumes" because the term is not a part of the Heading and the Explanatory Notes do not provide any explanation as to what are "oral perfumes." See Def.'s Brief at 22-23.  Alternatively, Customs argues that the meaning of the term "oral perfumes" is a material fact in genuine dispute which should be litigated.  See id. at 23.

The Explanatory Notes are a non-binding interpretive guide. See Mita Copystar Am. v. United States, 21 F.3d 1079, 1082 (Fed. Cir. 1994) (stating that "Explanatory Notes . . . do not constitute controlling legislative history but nonetheless are intended to clarify the scope of HTSUS subheadings and to offer guidance in interpreting subheadings") (citing Lynteq, Inc. v. United States, 976 F.2d 693, 699 (Fed. Cir. 1992)).  Although the Explanatory Note to Heading 3306 explicitly encompasses oral perfumes, to be classifiable under Heading 3306, the subject merchandise must be "actually, practically, and commercially fit" for use as an oral or dental hygiene product as per the terms of the Heading and the Chapter Notes.  Thus, as discussed supra, further findings of fact are necessary.

### CONCLUSION

Based on the foregoing, further findings of fact are required to determine if the subject merchandise (1) has the essential character of sugar or Retsyn®; or (2) is "actually, practically, and commercially fit" for use as an oral or dental hygiene product. Therefore, the parties' motions for summary judgment are denied.

                                    /s/ Nicholas Tsoucalas
                                   NICHOLAS TSOUCALAS
                                    SENIOR JUDGE

Dated:    March 3, 2008
          New York, New York